1. (a) An implied contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice.
(b) "Reasonable definiteness and certainty in pleading is all that should be required; and factitious demands by special demurrer should not be encouraged." Busby v. Marshall, 3 Ga. App. 764 (60 S.E. 376).
(c) "Mere relationship, no matter how near, will not of itself defeat recovery for services rendered by one related to another." Wall v. Wall, 15 Ga. App. 156 (2) (82 S.E. 791).
2. The evidence was somewhat conflicting, but when we construe it most strongly in favor of the verdict, as we are required to do, it is sufficient to sustain the verdict.
 DECIDED FEBRUARY 16, 1944.
Mrs. Ethel Lewis filed a petition in the superior court of Walker County against Mrs. Velma Young as executrix of P. E. Lewis to recover $2000 for services alleged to have been performed by the plaintiff for P. E. Lewis. Paragraphs 7, 8, and 9 of the petition read as follows: "7. Petitioner shows that she is a married woman, and she and her husband live together as husband and wife, and she shows that her husband agreed prior to the time petitioner performed said services for said P. E. Lewis, that she, Mrs. Ethel Lewis, might retain her earnings for herself and not account to him, T. B. Lewis, husband of petitioner, therefor. Petitioner shows that acting on this agreement by her husband and acting on an implied agreement on the part of the said P. E. Lewis, she did wait on and nurse the said P. E. Lewis through his last sickness and illness, did his washing and ironing, prepared his meals and served them, kept house for the said P. E. Lewis, and provided every care and attention the said P. E. Lewis required up until December 15, 1939. Petitioner shows that P. E. Lewis was in very *Page 628 
poor health from December 1, 1937, until December 15, 1939, and shows that he was afflicted with high blood pressure and kidney trouble, and that at times his mental capacity was somewhat impaired, and that while he was in a practically helpless condition he made arrangements with petitioner to do the aforementioned work for him. Petitioner shows that by reason of the physical condition of the said P. E. Lewis he required constant nursing and attention and had to be cared for day and night in his helpless and critical condition.
"8. Petitioner shows that from December 1, 1937, until December 15, 1939, the said P. E. Lewis maintained a home in which he lived by himself, only a few yards distant from the home of petitioner, and she shows that during this period of time she would prepare meals in her home and take to the home of the said P. E. Lewis, and that she waited on the said P. E. Lewis going to and from her own home, and shows further that by reason of the physical condition of the said P. E. Lewis she would move him into her home at times and perform the services there as set forth above.
"9. Petitioner shows that when he, the said P. E. Lewis, accepted the services of petitioner which consisted of nursing, waiting on, cooking, and doing household duties for him, the said P. E. Lewis, and cooking his meals and serving them and performing the said general household work incident and necessary in order to make him, the said P. E. Lewis, comfortable, a contract was created by implication whereby he the said P. E. Lewis became bound to pay petitioner a reasonable sum for such services; and she shows further that the said P. E. Lewis on frequent occasions stated to petitioner that he expected to pay her for said services, and that unless she received payment from him, she would receive payment therefor after his death. Petitioner shows that the sum of $2000 for said services is a reasonable charge, and that the estate of P. E. Lewis is indebted to her in the sum of $2000 for said services."
The answer to said paragraphs are as follows: "7. Answering the seventh paragraph of the petition defendant says that she admits that the petitioner is a married woman, and that the petitioner and her husband, Boyd Lewis, live together as husband and wife. For want of sufficient information, defendant can neither admit nor deny the averments contained in said seventh paragraph of the *Page 629 
petition relating to an agreement on the part of Boyd Lewis to the effect that petitioner might retain her earnings and not account to said Boyd Lewis for the same. Defendant denies the allegations of said seventh paragraph that the petitioner waited on and nursed P. E. Lewis through his last sickness and illness, and did his washing and ironing and prepared his meals and served them. She denies that petitioner kept house for said P. E. Lewis, and provided every care and attention said P. E. Lewis required up until December 15, 1939. Defendant denies the allegation that P. E. Lewis was in very poor health from December, 1937, until December 15, 1939. She says that her father was in very good health for a man of his age during all of said period of time mentioned, except for a period of time when he was afflicted with yellow jaundice and was confined to his bed for a period of some two or three weeks, during which time he remained in his own home. Defendant says during this period of illness that defendant looked after and cared for said P. E. Lewis, and she says that the petitioner, Ethel Lewis, and her husband, Boyd Lewis, the latter being a son of him, the said P. E. Lewis, were not about the home of said P. E. Lewis, and did not assist in waiting on him during said period of illness. Defendant says there is no word of truth at all in the allegations contained in said seventh paragraph of the petition to the effect that the petitioner waited on and nursed said P. E. Lewis through his last sickness, and did his washing and ironing, and prepared his meals and served them, and kept house for said P. E. Lewis, and provided every care and attention said P. E. Lewis required up to December 16, 1939. Defendant says, contrarily to this claim on the part of the petitioner that she nursed and waited on and looked after said P. E. Lewis during his last illness, that said P. E. Lewis, during his last illness, was confined to his bed in the home of defendant. Defendant says when said P. E. Lewis became afflicted with his final illness, that she took him at once to her home and nursed him and waited on him until he died, and that said Ethel Lewis did not even visit said P. E. Lewis, and did not perform any services of any sort for him. She says said Ethel Lewis did not even see said P. E. Lewis during his last illness, notwithstanding the fact defendant sent them word of the serious illness of said P. E. Lewis. Defendant says that if said P. E. Lewis was afflicted with high blood pressure and kidney trouble as alleged *Page 630 
in the suit brought by the petitioner, that defendant never had any information at all in reference thereto. She says she was constantly at his side, administering the drugs prescribed by his physician, talked with his physician every time he called to see said P. E. Lewis, bought all medicines that were taken by said P. E. Lewis, and that if he was ever afflicted with high blood pressure or kidney trouble, defendant never had any information at all regarding the same. Defendant admits that a short time prior to the death of her father, P. E. Lewis, that his mind was not entirely clear, which is a condition defendant says is not at all unusual where people are advanced in years and illness. She says the petitioner could not have ever known of his condition unless some one who saw said P. E. Lewis told her about his mind, for the reason the petitioner never saw him and was not about him at all.
"8. The allegations of the eighth paragraph of the plaintiff's petition are denied.
"9. The allegations of the ninth paragraph of the plaintiff's petition are denied, and defendant says that, contrarily to said averment of said ninth paragraph of the petition, that the plaintiff being a daughter-in-law of the decedent, did not wait upon or perform any unusual service at all for the decedent, and is not entitled to charge his estate for any small favors she may have extended to him, being wife of Boyd Lewis, Boyd Lewis being a son of P. E. Lewis, the deceased. Defendant specifically denies the averment that [there was] any contract on the part of said P. E. Lewis, now deceased, to pay Ethel Lewis, wife of Boyd Lewis, the latter being a son of the decedent as aforesaid; and she denies the averment that by reason of such service P. E. Lewis, the decedent, became bound to pay any sum of money for the same. She denies that P. E. Lewis ever stated to the petitioner that he, P. E. Lewis, expected to pay the petitioner for her services, and that unless she received payment from him that she would receive payment after his death. Defendant denies the averment that $2000 is a reasonable charge for any services the petitioner ever performed for the decedent, and she denies that the estate of her deceased father, represented by defendant, is indebted to the petitioner in the sum of $2000, or in any other sum."
The demurrer reads as follows: "1st: Defendant demurs to the seventh paragraph of the plaintiff's petition, wherein it is alleged *Page 631 
that the petitioner acted on an implied agreement on the part of P. E. Lewis, and acting on said implied agreement, she waited on and nursed said P. E. Lewis through his last sickness and illness, did his washing and ironing, prepared his meals and served them, kept house for him, and provided every care and attention said P. E. Lewis required up until December 15, 1939, on the grounds that these averments are in irreconcilable conflict with and contradictory to the further averment contained in said seventh paragraph of the petition to the effect that the decedent which the petitioner claims she did acting on an implied agreement on the part of said P. E. Lewis. Defendant says, in view of these irreconcilable and contradictory averments, it is impossible to determine whether the suit is predicated on an implied contract or an express contract, and for this reason it is impossible for defendant to properly prepare defensive pleadings. Defendant demurs further to said seventh paragraph of the petition on the ground that while it is therein alleged that by reason of the physical condition of said P. E. Lewis he required constant nursing and attention and had to be cared for day and night in his helpless and critical condition, it is not alleged in said paragraph of the petition, or elsewhere therein, whether or not the petitioner cared for the decedent day and night, each day and each night, from the 1st day of December, 1937, until the 15th day of December, 1939, or how many days or nights the petitioner cared for the decedent over said period of time. Defendant says from these loose, equivocal, and uncertain averments it is impossible for defendant to determine how much work the petitioner performed for the decedent, how many nights she worked for him, and how many days she worked for him over said period of time, and neither is it alleged what her work was worth per day and night.
"2nd: Defendant demurs to the eighth paragraph of the petition, wherein it is alleged that during the period of time from December 1, 1937 until December 15, 1939, petitioner prepared meals in her home and took the same to the home of P. E. Lewis, and waited on said P. E. Lewis, going to and from her own home, and that by reason of the physical condition of said P. E. Lewis she would move him into her home at times and perform the services there for him, on the grounds that from the allegation that `during *Page 632 
this period of time she prepared the meals,' and did the other work therein set forth, it can not be determined what portion of said services, of time the plaintiff claims to have performed said services, and defendant is entitled to know how much work during said period of time the plaintiff performed, how many days she worked for the decedent, and how many nights she worked for him. Defendant says she is unable to determine from the loose, uncertain claim contained in said eighth paragraph, `that by reason of the physical condition of said P. E. Lewis that petitioner would move him into her home at times and perform the services,' how many times the petitioner moved the decedent into the home of petitioner, how long he remained in the home of petitioner, or how many days or nights work the petitioner performed for the decedent while the petitioner had the decedent in her home, and defendant says she can not intelligently prepare any defensive pleadings, or make any defense to the suit based on the claim that petitioner `would move him into her home at times,' for the reason the petitioner does not allege how many times, or when the petitioner moved the decedent into the home of petitioner, or how much work she performed for him while the decedent was in the petitioner's home.
"3rd: Defendant demurs to the ninth paragraph of the petition, wherein it is alleged that when said P. E. Lewis accepted the services of petitioner, a contract was created by implication whereby the decedent became bound to pay petitioner a reasonable sum for her services, on the ground that this averment is wholly inconsistent with and contradictory to the further averment contained in said paragraph that the decedent agreed to pay the petitioner for the services and made the statement that unless he paid the petitioner she would receive payment for her services after the death of the decedent.
"4th: Defendant demurs further to the petition as a whole, on the ground that while it is therein alleged that the services referred to were performed by the petitioner and accepted by the decedent and a contract to pay was thereby created by implication, it is not alleged in the petition at all what relationship existed between the petitioner's husband and the decedent, or what relationship, if any, existed between the petitioner and the decedent; and under the law of this State, if the petitioner or her husband, the latter having, according to the petition, transferred or assigned his right to collect *Page 633 
from the decedent to the petitioner, were very near relatives of the decedent, there could be no presumption to pay for the alleged services, and could be no contract by implication to pay for the same.
"5th: Defendant demurs further to the petition, and particularly the statement contained in the ninth paragraph thereof,`and she shows further that the said P. E. Lewis, on frequent occasions, stated to petitioner that he expected to pay her for said services, and that unless she received payment from him, that she would receive payment therefor after his death,' upon the ground that while by this averment the pleader undertakes to set up an express contract between the petitioner and the decedent, the same is legally insufficient and should be stricken for the reason it is not alleged at what rate the petitioner was to be paid for her services, how much per day or how much per night; it is not alleged whether she was to be paid by the day, month, or year for her services; and the contract, if there was one, was lacking or wanting in sufficient definiteness to be the basis of any action.
"6th: Defendant demurs further to the petition upon the ground that the pleader undertakes to predicate her suit on a contract by implication, but does not allege what relationship, if any, existed between the pleader and the decedent, nor what relationship, if any, existed between the husband of the petitioner and the decedent, and under the law of this State, if the petitioner or her husband were very near relatives of the decedent, there could be no implied promise to pay for the alleged services rendered by the petitioner."
The demurrer was overruled, and exceptions pendente lite were duly filed. The jury returned a verdict in favor of the plaintiff, and the defendant's motion for a new trial was overruled. The bill of exceptions assigns error on the judgment overruling the motion for new trial, and also on the judgment overruling the demurrer.
Substantial portions of the evidence are as follows: Boyd Lewis, sworn for the plaintiff, testified: "I am Boyd Lewis, husband of the plaintiff in this case. The deceased, P. E. Lewis, was my father. I gave my wife, the plaintiff, the right to collect what she earned waiting on my father, and to retain the same for her own. She did the washing, ironing, and cooking for my father from 1937 until December 15, 1939. He had falling spells, and Andrew Young helped me carry him from his home to my place, where my *Page 634 
wife waited on him and nursed him. He would soil the bedclothes, and she would have to clean up after him. My father's estate owes my wife for that service in the amount sued for in this case, $2000. I heard my father have an agreement with my wife, the plaintiff, whereby my father agreed to pay my wife for her services, and he stated, if my wife was not paid before he died she could collect from his estate. . . I have no financial interest in this case. Prior to the rendition of the services to P. E. Lewis, my wife and I agreed that she might retain her earnings. My wife retained the money she earned selling chickens and eggs and things of that sort, but I can not tell you when I entered into a contract with her, or had an agreement with her, whereby she was to retain her earnings for her services in waiting on my father. I did not have such a contract or agreement with her at all. . . Yes, I did not require her to account to me for what she earned waiting on my father."
The plaintiff testified: "I did the washing and ironing for P. E. Lewis, and my husband agreed that I could retain my earnings for myself. My father-in-law, my husband's father, had falling spells. He wanted some tomato juice and Velma would not get it for him and I got it. I nursed him, and waited on him when he was sick. He was sick most of the time from the first day of December, 1937, up until the 5th day of December, 1939, and I performed services for him over that period of time. My husband agreed that I could retain my earnings before I rendered the services. I rendered them daily from the first day of December, 1937, to the 5th day of December, 1939, except two or three week-ends that he spent with Velma Young. I paid a doctor's bill of $2 for him. For my services the estate owes me the amount sued for in this case, $2000. He soiled his bedclothes, and I changed them for him. I can't say what it was worth per day for me to cook for him, and I can't tell you what it was worth for washing his clothes, or how much I charged him per day or week for my services nursing him and waiting on him. I can't tell you how I arrived at the amount I sued for in this case. It is true that P. E. Lewis was not at my house at all during his last illness and death. He was sick at my house in 1937, and I waited on him. I can not tell you what it was worth."
The doctor testified: "I waited on P. E. Lewis during his lifetime. He had high blood pressure and kidney trouble. He was *Page 635 
a very sick person from 1937 up to the date of his death. I called on him frequently. He never recovered from his 1937 illness. Mrs. Lewis was giving him every attention and treated him kindly. They were all waiting on him. Boyd's wife (Mrs. Ethel Lewis, the plaintiff) and Mrs. Velma Young (the defendant executrix) were waiting on him. He was old and feeble, and needed someone to look after him. He was at Velma Young's house when he died. I did not see the plaintiff, Ethel Lewis, there waiting on him."
Herbert Hughes testified: "I lived in the neighborhood with P. E. Lewis over a time, and I visited him occasionally. When I visited him, I saw Ethel Lewis cooking and sweeping there. He was a feeble man for his age. I have seen Ethel Lewis taking trays from her home to the home of her father-in-law, P. E. Lewis."
Velma Hughes testified: "I am the wife of Herbert Hughes and lived in the community where P. E. Lewis lived. I visited his home when he was sick. It was like any other sick-room. I saw Ethel Lewis changing the bedclothes, and saw her cooking and sweeping. She did things waiting on him that I would not like to mention in court."
John Edgerman testified: "I saw P. E. Lewis at Boyd Lewis's house and he was chilling; he needed somebody to take care of him. Ethel Lewis was waiting on him."
Mrs. Gravitt testified: "Ethel sent to Ringgold for me to come and make baskets for her while she waited on P. E. Lewis. I visited there again a few days before he died. He was at Boyd's house, and died at Boyd's house. I saw Ethel waiting on him and cooking for him." On cross-examination she stated that she was Ethel Boyd's sister.
Mrs. Young, the plaintiff in error, testified in substance that she took care of her father, but that "Ethel . . and Boyd . . came there and helped some with him. We sat up with him some. He owned the place where he lived, and the place where Boyd and Ethel lived. He also owned the place where I lived."
Floyd Lee testified in behalf of Mrs. Young, saying that Mrs. Young took care of Mr. Lewis. However, he said further: "She [Ethel Lewis] could have cooked or washed for him, I suppose, when I was not at home, when I was away at work, and I couldn't have seen her. I worked away from home during the day some while I lived on Mrs. Lewis's place." *Page 636 
Mrs. Floyd Lee, by deposition made in behalf of Mrs. Young, said that Mrs. Young, and not Mrs. Lewis, cared for P. E. Lewis.
1. We have set out verbatim the essential paragraphs of the petition because the writer believes that the public is entitled to such background as will enable members of the bar to better apply principles of law to future cases.
The defendant demurred to paragraph 7 of the petition on the basis of inconsistency. We have set forth this paragraph and the demurrer to the same. By reference it will be seen that the language in the statements claimed to be inconsistent can fall within the status of an implied contract. We do not think that "made arrangements with" is out of the scope of an implied contract. Certainly it would be difficult to put such phraseology within the scope of an express contract. We do not think that the phrase "made arrangements with" is as exact and comprehensive as is the phraseology in Haas v. Jaffe, 45 Ga. App. 11
(163 S.E. 226), wherein this court said: "In a suit against an executor to recover for services alleged to have been rendered by the plaintiff to the testator during his lifetime, allegations that `petitioner has never been compensated in any way for said services, though it was understood between them that she was to be fully paid, the said [testator] expressly stating to her from time to time that he would pay her for said personal services as soon as he was physically able,' and that `said personal services are of the reasonable value of $100 per month' during the period in which such services were rendered, did not show a suit upon an express contract, but the petition should be construed as an action upon a quantum meruit for the reasonable value of the services rendered. Georgia, Florida c. R. Co. v. Purviance,42 Ga. App. 519 (156 S.E. 731)." In Watts v. Rich, 49 Ga. App. 334
(175 S.E. 417), the court said: "A petition against an administrator of the estate of a named person, which alleges: that the plaintiff and her husband were asked by the intestate, an aged man who was sick with tuberculosis, to come to his house and live with him and take care of him; that the plaintiff and her husband moved into his house and lived with him, buying the groceries and taking care of him; that plaintiff waited upon him, built his fires, cooked his meals, sometimes serving them to the intestate in bed, attended and cared for him when he was confined *Page 637 
to his bed from sickness, and even nursed him, sometimes all during the night; that said work of attending to the intestate was tiresome, and dangerous on account of the disease he had, but plaintiff did so tenderly and carefully, meeting every need and want of the intestate; that the services plaintiff performed were satisfactory to the intestate; that the intestate had no relatives other than one brother, and was not on speaking terms with him; that no relatives of the intestate attended his funeral or made any arrangements therefor; that plaintiff attended the intestate from January 1, 1931, until his death on July 15, 1932, and that her services in this connection were reasonably worth $100 per month during 1931 and $150 monthly during 1932, the intestate being bedridden more during 1932, and consequently requiring more of the plaintiff's time to properly look after his needs and wants; that the estate of the intestate was solvent and he had no heirs except said brother; and that plaintiff is entitled to a judgment for the reasonable worth of her services, sets forth a cause of action against the estate of the intestate. While a plaintiff is required to set out his cause of action in a full, complete, and definite manner, in order that the defendant may, without difficulty, understand the nature of the plaintiff's charge or demand, and make preparation to meet it (Civil Code, § 5538), this requirement is to be liberally construed (Kemp v.Central c. R. Co., 122 Ga. 559, 50 S.E. 465); and a plaintiff is not required to allege impossible particulars or unnecessary details (Bittick v. Georgia c. R. Co., 136 Ga. 138,70 S.E. 106), nor is a plaintiff required to set forth in his petition the evidence relied on to make out his cause of action, it being sufficient if he alleges enough to inform the opposite party of the grounds of his action, and to enable the jury to find an intelligible and complete verdict, and enable the court to declare distinctly the law of the case. CedartownCotton c. Co. v. Miles, 2 Ga. App. 79 (58 S.E. 289);Wrightsville c. R. Co. v. Vaughan, 9 Ga. App. 371 (2), 377 (71 S.E. 691)." The cases of Moore v. Smith, 121 Ga. 479
(49 S.E. 601); Miller v. Southern Railway Co., 21 Ga. App. 367
(94 S.E. 619); Burnett v. Lunsford, 45 Ga. App. 168
(164 S.E. 100), and McCullough v. Atlantic Refining Co.,50 Ga. App. 237 (177 S.E. 601), cited by plaintiff, differentiate themselves by their facts from the case at bar.
The defendant further contends that the petition was demurrable *Page 638 
because it did not allege details as to how the amount of money due was arrived at, and asked for more specific details as to just how much work was done by the plaintiff, and for specific charges for such services. In our opinion this contention is fully answered by Watts v. Rich, supra, hereinbefore quoted in part. See also Webb Cotton Co. v. Gordon, supra, wherein Judge Broyles, speaking for the court, said: "Reasonable definiteness and certainty in pleading is all that should be required; and factitious demands by special demurrer should not be encouraged." (Quoting Busby v. Marshall, supra). The same authorities are applicable as to paragraph 8 of the demurrer.Cooper v. Cooper, 59 Ga. App. 832 (2 S.E.2d 145), cited by counsel for plaintiff in error, does not apply to the instant case because in that case there was no express or implied contract to pay for the services rendered, while in the instant case there is sufficient pleading and evidence of intent to pay for services.
2. There being no special grounds, the only question is: did the evidence sustain the verdict? The evidence is somewhat conflicting and raised a jury question. There is sufficient evidence to sustain the verdict, and this court is without authority to disturb the jury's finding.
Judgment affirmed. Broyles, C. J., and MacIntyre, J.,concur.