## 63934. GIORDANO v. FEDERAL LAND BANK OF COLUMBIA et al.

QUILLIAN, Chief Judge.

Appellee Sam Giordano made application to the Federal Land Bank of Columbia through its regional bank in Gainesville for a loan in the amount of $150,000.00. As a part of the transaction Sam Giordano executed a Deed to Secure Debt to the Land Bank covering 225 acres of land located in White County, Georgia. A promissory note in the amount of $150,000.00 was signed which called for one annual installment payment of interest only and 29 subsequent annual installments of $13,957.59, and one final installment of the unpaid principal balance and all accrued interest. Subsequently, the loan was assumed by appellant Shirley Giordano — the ex-wife of Joe Giordano who was the brother of Sam Giordano. For ease of reference we shall refer to the Giordanos as Sam, Shirley and Joe.

The first interest payment was made on the promissory note by Joe — Sam's brother. No further payment was made. The loan went into default and the land securing the loan was sold for $135,000 and the sale was subsequently confirmed by the Superior Court of White County. The Federal Land Bank brought this action for the deficiency against Sam and Shirley. Sam answered and cross-claimed against Shirley alleging her assumption made her liable to him for any sum which might be adjudged against him because of the default on the assumed loan.

Shirley answered and cross-claimed against Sam alleging that Sam acted in concert with her ex-husband Joe who told her that the documents she signed assuming the Federal Land Bank loan were creating a trust for their children. Shirley alleged that Sam, his brother Joe (her ex-husband) and Joe's business manager Tom Catanese falsely and fraudulently deceived her and that "she was entitled to rely" upon such representations of Sam and Joe, and Sam should be liable to her for any amount she is required to pay the Bank.

The trial court directed a verdict for the Bank against Sam and Shirley for the amounts due under the loan. In addition, the court directed a verdict in favor of Sam on Shirley's cross-claim to indemnify her for any amount she was liable to the Federal Land Bank for the loan she assumed. The remaining issue of the cross-claim by Sam against Shirley for any amount for which he would be held liable to the Federal Land Bank was submitted to the jury for resolution. Shirley appeals from a jury verdict and judgment for Sam on his cross-claim, and the court's directed verdict for the Bank. *Held:*

1. Appellant's first enumerated error complains that "[t]he

verdict . . . is contrary to the weight of the evidence." An appellate court passes on the sufficiency of the evidence, not the weight. *Union Brokerage Co. v. Fine,* 30 Ga. App. 788, 789 (3) (119 SE 343); *Rambo v. Goldin,* 35 Ga. App. 413 (1) (133 SE 297); *Madden v. Keith,* 146 Ga. App. 13, 14 (2) (245 SE2d 350); *Williams v. Stankowitz,* 149 Ga. App. 865, 866 (256 SE2d 147). There is some evidence to support the verdict and judgment.

2. We find no error in the trial court's charge on implied contract. "An implied contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice." *Young v. Lewis,* 70 Ga. App. 627 (1) (a) (29 SE2d 267). Appellant argues that because "any agreement to answer for the debt of another must be in writing," it was error to charge on implied contract as a basis of liability for Shirley to answer for the debt of Sam. Appellant misconstrues the terms of Code Ann. § 20-401 (2) (Code § 20-401; Ga. L. 1962, pp. 156, 427), which provides in part: "To make the following obligations binding on the promisor, the promise must be in writing. . .(2) A promise to answer for the debt, default, or miscarriage of another. . ." As between the creditor (Federal Land Bank) and the promisor (Shirley), the promisor's agreement to answer for the debt of Sam would have to be in writing — and the assumption of the loan was in writing. However, Sam was suing Shirley for indemnification of any amount he had to pay the Bank, and he was suing on the theory that the assumption agreement implied that Shirley would indemnify him. This Court held, in *Southern Nitrogen Co. v. Stevens &c. Co.,* 114 Ga. App. 581, 584 (151 SE2d 916) that "[t]he duty to indemnify may arise from some express or implied agreement to indemnify, or may arise by operation of law, independently of contract." Sam testified that he had been induced to enter into the loan agreement with the bank by his brother Joe on the understanding that he would be released when the loan was assumed. It is not disputed that Joe made the only payment ever made on the loan and upon her assumption of the loan Sam's $7,500.00 worth of stock in the Federal Land Bank Association was transferred to Shirley. In addition, Shirley testified that when she received notice that the loan was in default, she knew it was Joe's land that had been used as security and that the loan had been made for Joe's benefit, so she called Joe and he told her it was his debt and he would take care of it. The trial court submitted to the jury the issue of Shirley's liability to indemnify Sam under the provisions of the assumption agreement and they found for Sam. This enumeration is without merit.

3. It is contended that the trial court erred in failing to send two exhibits out with the jury — Land Bank Exhibit 6 (a demand letter

from the Bank to Sam following default in payment of annual installment), and Sam's Exhibit 8-4 (which showed Sam received $57,774.56 from the proceeds of the loan). We must note that the court had granted a directed verdict to the Bank against Sam and Shirley, and directed a verdict against Shirley on her cross-claim. Thus, exhibits relating to those issues withheld from the jury would not result in error. *Moon v. Moon,* 240 Ga. 208 (3) (240 SE2d 17). The trial court held a hearing on the issue of what should go out with the jury and attempted to restrict exhibits to those dealing with "the only issue here . . . whether or not Mrs. Giordano . . . agreed that she would hold Sam harmless in this assumption." First, we have found no objection to the ruling by the court refusing to send out these two exhibits. Secondly, the trial court found neither document to have relevance to the single remaining issue submitted to the jury. We find no reversible error. See *MacNerland v. Johnson,* 137 Ga. App. 541 (1) (224 SE2d 431).

4. Appellant argues that the court erred in directing a verdict in favor of the Land Bank against her inasmuch as her testimony relating to her defense of fraud required jury determination. Appellant does not contest that she signed the assumption document — only that she was prevented from reading the document and was told by her former husband's business manager — Tom Catanese, that the document related to a trust Joe was establishing for their three children.

"The rule in this state is that where one who can read signs a contract without reading it, he is bound by the terms thereof, unless he can show that an emergency existed at the time of signing that would excuse his failure to read it, or that the opposite party misled him by an artifice or device which prevented him from reading it, or that a fiduciary or confidential relationship existed between the parties upon which he relied in not reading the contract." *Cochran v. Murrah,* 235 Ga. 304, 305 (219 SE2d 421).

We find no fiduciary relationship. See Code Ann. § 37-707 (Code § 37-707). The fiduciary relationship claimed by appellant — that of husband-wife is one created by marriage. We can find no logical basis for not finding a termination of the relationship with the marriage that created it. However, this need not be the basis of our decision. Pretermitting whether there was a fiduciary relationship between appellant and her ex-husband and/or his business manager — there was no showing that the alleged fraud of her ex-husband and his business manager was connected in any way to the Bank or to Sam. Thus, whether she was defrauded by her ex-husband and his business manager had no relevance to the claims asserted by the Bank and Sam. Appellant admitted she signed the assumption and the Bank

proved the default. A directed verdict for the Bank was proper.

5. Appellant's cross-claim alleges there was a fraudulent conspiracy between Joe and Sam Giordano, and Tom Catanese, to trick her into executing the loan assumption documents. However, there is a total failure of proof of any connection of the defendant Sam Giordano with either Joe Giordano or Tom Catanese concerning the loan assumption. Shirley also testified that she never discussed the assumption of the loan with Sam — either before or after she signed the documents. On the other hand, Sam testified to the lack of any agreement or conspiracy with Joe or Tom concerning Shirley signing the loan assumption. Tom Catanese testified to overhearing Shirley and Joe discussing the assumption before she signed it — contrary to her testimony. Catanese heard Shirley and Joe discussing the value of the property pledged as collateral for the loan to the bank, and Shirley mentioned that she wanted to discuss the matter with her lawyer before she signed the papers. Catanese testified that he heard them discuss Joe transferring his property in Gwinnett County to Shirley as security for her signing the assumption agreement. In fact, Joe did transfer a 59-acre tract of land in Gwinnett County to Shirley after she signed the loan assumption agreement. Shirley testified it was payment for back alimony. Nevertheless, we have found a failure of proof of appellant's cross-claim and it was not error for the trial court to direct a verdict against her.

6. It was not error to restrict presentation of evidence in appellant's case to the single issue remaining before the court — after the court had directed a verdict for plaintiff against Sam and Shirley, and directed a verdict for Sam on Shirley's cross-claim against him.

7. Appellant argues that the court erred "in refusing to permit Appellant to make an offer of proof with respect to an agency relationship between Tom Catanese and the Land Bank." The record does not support the assertion that the trial court refused to permit appellant to make the offer of proof. On an earlier occasion the trial court had refused to permit counsel to pursue a line of questioning and counsel had requested to make an offer of proof. The trial court ruled: "No, sir. You can do so at the conclusion of trial. You can make it by affidavit if you like as to what you contend the evidence would show. [Counsel]: All right, sir. The Court: and we will consider it part of the record." At the time of this latter offer of proof, defendant's counsel asked: "May I make an offer of proof? The Court: No, sir, not at this time. All right, sir. Go ahead." The pattern followed by the court was consistent with both parties. If defendant's counsel had desired to pursue the making of the offer of proof he was aware that the court only denied permission for him to interrupt the trial "at this time" and he had observed the court's earlier ruling that it would be

permissible to tender the offer at the conclusion of the trial. This enumeration is not meritorious.

8. We have examined appellant's last enumerated error and find no reversible error.

*Judgment affirmed. Shulman, P. J., concurs. Carley, J., concurs in the judgment only.*

DECIDED SEPTEMBER 9, 1982.

*Richard D. Elliott, Michael A. Dailey,* for appellant.
*William H. Blalock, Jr., Robert P. Wilson, W. John Wilson, J. Douglas Stewart,* for appellees.