A92A1239. DEPARTMENT OF TRANSPORTATION v. FRU-CON
CONSTRUCTION CORPORATION.
(426 SE2d 905)

CARLEY, Presiding Judge.

The facts, insofar as they are relevant to the instant appeal, are as follows: Appellant-defendant Department of Transportation (DOT) undertook a highway construction project which included the construction of some 15 bridges. DOT contracted with appellee-plaintiff Fru-Con Construction for the construction of these bridges. The contract specified that appellee would complete the bridges by a specified date and that, if it did not, it would be liable for liquidated damages. Appellee failed to complete the bridges within the time specified in its contract and, for this delay, DOT withheld liquidated damages from the amount of its final payment to appellee. Appellee filed suit against DOT, seeking not only to recoup the liquidated damages which had been withheld from its payment, but also seeking to recover damages for DOT's alleged breach of contract. The case was tried before a jury and a substantial verdict, including an award of OCGA § 13-6-11 attorney's fees, was returned in favor of appellee. DOT appeals from the judgment that was entered by the trial court on the jury's verdict.

1. Grading work was preliminary to appellee's bridge construction work. However, the graders with whom DOT had contracted for this preliminary work did not complete the grading within the time specified in their contracts. Alleging that it was this delay in the preliminary grading work that had caused the delay in its bridge construction work, appellee sought damages for losses and expenses it incurred as the result of the graders' untimely performance. DOT enumerates as error the trial court's denial of a motion for directed verdict as to appellee's recovery on this claim.

In the absence of a contractual duty, there can be no breach of contract. The graders certainly owed a contractual duty *to DOT* to have the grading completed within the time specified in their grading

contracts. However, DOT did *not*, in turn, owe a contractual duty to provide appellee with completely graded bridge sites on the dates specified for completion of the grading contracts. Under appellee's theory, DOT "would be warranting the timeliness of work outside its control. However, it is hardly 'within the realm of normal expectation' that [DOT] would 'voluntarily stand as a guarantor of the performance of its contract by another contractor within a specified time.' [Cits.] It has also been said that the government will not be held liable unless the contract can be interpreted as implying an unqualified warranty to make the work in question available. [Cit.] . . . [DOT] may have represented [to appellee] that the [grading] work would be done at a specified time, but there was no guarantee. [Cit.]" *Rhode Island Turnpike &c. Auth. v. Bethlehem Steel Corp.*, 379 A2d 344, 353-354 (R.I. 1977).

Moreover, Paragraph 105.07 of appellee's contract with DOT provides: "When separate contracts are let within the limits of any one project, each contractor shall conduct his work so as not to interfere with or hinder the progress or completion of the work being performed by other contractors. Contractors working on the same project shall assume all liability, financial or otherwise, in connection with his contract and shall protect and save harmless [DOT] from any and all damages or claims that may arise because of inconvenience, delay, or loss experienced by him because of the presence and operations of other contractors working within the limits of the same project." This is a clear and unambiguous expression of the mutual intent that DOT would *not* assume vicarious contractual liability for untimely performance by its various contractors and would *not* be liable to appellee for "damages relating to late delivery of [the bridge sites]." *Rhode Island Turnpike &c. Auth. v. Bethlehem Steel Corp.*, supra at 354. Compare *Department of Transp. v. Arapaho Constr.*, 257 Ga. 269 (357 SE2d 593) (1987) (discussing the applicability of a "no damages" clause in connection with DOT's breach of its *own* contractual obligations, and not in connection with delay resulting from breach by *another* contractor of the contractual duty owed to DOT). Any contention that Paragraph 105.07 is inapplicable in the instant case because it is not broad enough to "pertain to delays resulting from other contracts, specifically those with [the grading contractors] . . . does not withstand scrutiny. Reading the [entirety of the provision], one can see that [P]aragraph 105.07 envisions the awarding of more than one contract within a given project, which in this case was the construction of [the entire highway project]." *Rhode Island Turnpike &c. Auth. v. Bethlehem Steel Corp.*, supra at 354. The instant "no-damages" provision "would be valid and would [be applicable] in any instance where [delay] had been [caused] for any of several reasons *not* the result of a breach of contract on [DOT's] part, which prevented

appellee from performing its duties under the contract. (At least one possible example would be where [delay] was [caused] as a result of [in]action by one of the *other* parties involved in the . . . construction.)" (Emphasis in original in part and supplied in part.) *Department of Transp. v. Arapaho Constr.*, 180 Ga. App. 341, 343 (1) (349 SE2d 196) (1986), aff'd 257 Ga. 269, supra.

It follows that the trial court erred in failing to grant DOT's motion for a directed verdict as to appellee's claim for damages based upon delay allegedly attributable to the untimely performance of the preliminary grading work.

2. The holding in Division 1 would not preclude appellee from seeking to recoup liquidated damages withheld by DOT for appellee's failure to complete the bridge work within the time specified. Paragraph 105.07 merely precludes appellee from recovering damages from DOT based upon delay attributable to untimely performance by the other contractors engaged in the highway project. It does not purport to authorize DOT to recover liquidated damages from appellee based upon delay which is not attributable to appellee.

DOT nevertheless enumerates as error the denial of its motion for a directed verdict as to appellee's entitlement to recoup the withheld liquidated damages. According to DOT, appellee cannot contest its liability for liquidated damages because appellee did not make a timely written request for an extension of time as required under Paragraph 108.07 (D) of the contract, which provides as follows: "If the normal progress of the work is delayed for reasons beyond his control, the contractor shall within fifteen days after the start of such a delay, file a written request to the engineer for an extension of time setting forth therein the reasons for the delay which he believes will justify the granting of his request."

Pursuant to this provision, if appellee wished to excuse any untimely performance of *its* work based upon the untimely performance of the preliminary grading work, appellee would be required to give DOT *written* notice within *15 days* of the date that the graders were otherwise contractually required to have completed their work. "[U]nder the terms of the contract, if [appellee's] performance was delayed for reasons beyond its control, the proper contractual remedy was for it to apply, in writing, to the project engineer and [DOT] for an extension of time. . . . Assuming that [appellee] experienced any . . . delay for reasons beyond its control, the proper time for raising the issue was ["within fifteen days after the start of such a delay"] and the proper method for excusing the delay was that method identified in the contract. However, this contractual right to excuse . . . delays in performance was not asserted by [appellee] in a timely and proper fashion." *Dan-D, Inc. v. Burnsed Enterprises*, 188 Ga. App. 207 (1) (372 SE2d 303) (1988).

Appellee's main contention is that, even if it failed to satisfy the requirements of Paragraph 108.07 (D), DOT waived that requirement of timely written request for an extension of time because DOT had actual knowledge that the graders had not timely completed their work. However, DOT's mere knowledge that the graders had not timely completed their work is certainly not evidence that DOT waived the requirement that appellee, in turn, apply for an extension because it would need extra time to complete its own work. Indeed, in the absence of such a request by appellee, DOT was entitled to presume that appellee did *not* consider the delay in the grading work to be a ground for extending the time for completion of the bridges. If DOT's mere knowledge were sufficient, the provision requiring timely written request for an extension of time would be meaningless and superfluous. There is no evidence that DOT, "with such knowledge [of the graders' untimely performance,] did *any affirmative act* which would lead [appellee] to believe that it was not necessary for it to give [timely] notice of a claim for [extension of time]; and mere silence when there is no duty to speak, cannot constitute a waiver or estoppel." (Emphasis supplied.) *State Hwy. Dept. v. Hewitt Contracting Co.*, 113 Ga. App. 685, 693 (2) (149 SE2d 499) (1966).

The most that the evidence shows is that, in response to appellee's *untimely* written requests for extensions of time, no extensions of time were forthcoming. "Viewing the evidence in the light most favorable to [appellee], it is clear . . . that [appellee] failed to substantially complete its contractual obligations within the time agreed upon by the parties, and that [appellee] produced no evidence of a contractual defense to [DOT's] claim for liquidated damages. Accordingly, the trial court [erred] in [failing to hold], as a matter of law, that appellee was [not] entitled to [recoupment] of liquidated damages." *Dan-D, Inc. v. Burnsed Enterprises*, supra at 207-208 (1).

3. Appellee urges that, even if the trial court erred in failing to grant DOT's motion for a directed verdict as to the *contractual* claims for damages and recoupment of liquidated damages based upon delay attributable to the graders, the judgment as to those claims must nevertheless be affirmed because, in addition to recovery under the terms of the contract, appellee sought recovery under an alternative eminent domain theory. Appellee urges that, under the "right for any reason" rule, the judgment in its favor must be affirmed under this alternative theory.

There is authority for the proposition that one who has contracted with the state can sue and recover based upon an eminent domain theory. *C. F. I. Constr. Co. v. Bd. of Regents &c. of Ga.*, 145 Ga. App. 471 (243 SE2d 700) (1978); *Fonda Corp. v. Dept. of Human Resources*, 147 Ga. App. 226 (248 SE2d 528) (1978). However, these cases were all decided at a time when sovereign immunity was a via-

ble defense to a contract claim against the state, and the holdings therein merely stand for the proposition that, notwithstanding the viable defense of sovereign immunity, one having a contract claim against the state can rely upon the eminent domain constitutional provision to bring a quantum meruit action against the state. Because the *express* contract was unenforceable, the contracting party could proceed against the state on an *implied* contract theory. "An implied contract is one not created or evidenced by distinct and explicit language, but inferred by law as a matter of reason and justice." *Young v. Lewis*, 70 Ga. App. 627 (1a) (29 SE2d 267) (1944).

The state *no* longer has a sovereign immunity defense to contract actions brought against it. "[T]he state's defense of sovereign immunity is . . . waived as to any action ex contractu for the breach of any written contract . . . entered into by the state or its departments and agencies." Art. I, Sec. II, Par. IX (c) of the Ga. Const. of 1983. Accordingly, the present constitutional provision waiving the defense of sovereign immunity has obviated the holdings in *C. F. I. Constr. Co.* and *Fonda Corp.* One *can* now sue the state on an express contract and this viability of a claim on the express contract *precludes* recovery on an implied contract theory. "There cannot be an express and implied contract for the same thing existing at the same time between the same parties. It is only when the parties themselves do not expressly agree, that the law interposes and raises a promise; and no agreement can be implied where there is an express one existing." *Ramsey v. Langley*, 86 Ga. App. 544, 549 (4) (71 SE2d 863) (1952). Accordingly, appellee must recover on the basis of the express contract with DOT and cannot recover under the implied contract theory which existed prior to the effective date of the 1983 constitution.

Moreover, even if appellee could rely upon implied contract as a viable alternative theory of recovery, the judgment for damages and recoupment of liquidated damages discussed in Divisions 1 and 2 still could not be affirmed under that theory. The jury returned a general verdict and did not specify under what *theory* the award of damages was being returned, and the verdict may well have been based upon the erroneous legal theory that DOT was liable on those claims under the express contract. *England v. Ga.-Fla. Co.*, 198 Ga. App. 704, 705 (1) (402 SE2d 783) (1991). "Since the jury found a general verdict for [appellee] against [DOT], the verdict cannot stand for the reason that this court cannot determine whether the verdict was entered upon a proper basis. [Cits.]" *Georgia Power Co. v. Busbin*, 242 Ga. 612, 616-617 (8) (250 SE2d 442) (1978).

4. In addition to the claim for damages for delay discussed in Division 1 and the claim for recoupment of liquidated damages discussed in Division 2, appellee also sought to recover certain "direct costs." DOT does not enumerate any error with respect to its liability

for these costs, but has conceded its liability for at least a part thereof. Because a general verdict was returned, however, it cannot be determined what portion thereof was attributable to the "direct costs." Accordingly, the judgment must be reversed with direction that the trial court enter judgment in favor of DOT in accordance with its motions for directed verdict discussed in Divisions 1 and 2 and that a new trial be held solely as to DOT's liability for the "direct costs." See *England v. Ga.-Fla. Co.*, supra at 705 (1).

5. The partial grant of new trial discussed in Division 4 requires that we address certain rulings which may recur at that limited retrial. Those rulings all relate to appellee's recovery of OGCA § 13-6-11 attorney's fees.

"OCGA § 13-6-11 does not create an independent cause of action. That statute merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of his damages. [Cit.]" *Brown v. Baker*, 197 Ga. App. 466, 467 (2) (398 SE2d 797) (1990). "The damages allowed under this Code section are compensatory, not punitive or vindictive. [Cit.]" *Bankers Fid. Life Ins. Co. v. Oliver*, 106 Ga. App. 305, 308 (3) (126 SE2d 887) (1962). The constitutional waiver of sovereign immunity in contract actions against the state is *not* limited to a waiver of only certain elements of recoverable compensatory damages. It follows that the trial court correctly denied DOT's motion for a directed verdict as to its sovereign immunity defense to liability for OCGA § 13-6-11 attorney's fees. See *Eastern Air Lines v. Fulton County*, 183 Ga. App. 891, 894 (4) (360 SE2d 425) (1987).

The trial court refused to admit certain evidence which DOT asserted was relevant to its defense to liability for OCGA § 13-6-11 attorney's fees. The trial court acknowledged the relevancy of the evidence,. but nevertheless excluded it on the ground that it "would be misleading to the jury and prove a significant problem for them to focus on the issues that we have in this case." The trial court was correct in recognizing the potential relevancy of the excluded evidence to DOT's defense to the recovery of OCGA § 13-6-11 attorney's fees. Even assuming that the trial court was further correct in ruling that the evidence was nevertheless excludable because its potential for confusing the jury outweighed its relevancy, that rationale will certainly not exist at the limited retrial, wherein the *sole* issue will be DOT's liability for the "direct costs" and its bad faith, stubborn litigiousness or causing unnecessary expense as to appellee's recovery of those costs. Accordingly, if DOT seeks to introduce the evidence at retrial, the trial court should admit it for the jury's consideration.

Finally, DOT enumerates as error the trial court's failure to give *appellee's* timely written request to charge on OCGA § 13-6-11 attorney's fees. It would appear that the language of appellee's request was

an accurate statement of the law and was adjusted to the evidence. The mere fact that the language does not appear in a pattern charge is no ground for refusing a requested charge which is accurate and applicable. However, we cannot determine whether the failure to give this charge was error. DOT has no standing to enumerate error as to the trial court's failure to give *appellee's* request to charge. See *Valdez-Hardin v. State*, 201 Ga. App. 126 (410 SE2d 354) (1991). Accordingly, if, at the retrial, DOT wishes the jury instructed on principles applicable to the recovery of OCGA § 13-6-11 attorney's fees, it should submit its own timely written request therefor and, if that request is not given, DOT must object in order to preserve the issue for appellate review.

6. Remaining enumerations of error have been considered and are found to be moot or to be unlikely to recur at the limited retrial.

7. The judgment is reversed as to appellee's claims for damages and for recoupment of liquidated damages based upon delay, with direction that the trial court enter judgment in favor of DOT as to those claims. The judgment is reversed as to appellee's claim for "direct costs" and OCGA § 13-6-11 attorney's fees, with direction that a new trial be held as to that claim.

*Judgment reversed with direction. Pope and Johnson, JJ., concur.*

DECIDED DECEMBER 1, 1992 —
RECONSIDERATION DENIED DECEMBER 17, 1992 —

*Michael J. Bowers, Attorney General, Hendrick, Spanos & Phillips, David R. Hendrick, Martin R. Salzman*, for appellant.
*Smith, Currie & Hancock, Joseph C. Staak*, for appellee.