461 S.E.2d 257 (1995)
218 Ga. App. 243
HOLLOWAY CONSTRUCTION COMPANY
v.
DEPARTMENT OF TRANSPORTATION.
DEPARTMENT OF TRANSPORTATION
v.
HOLLOWAY CONSTRUCTION COMPANY.
Nos. A95A0254, A95A0255.
Court of Appeals of Georgia.
July 13, 1995.
Reconsideration Denied July 31, 1995.
Certiorari Denied November 9, 1995.
*258 Wasson, Sours & Harris, John D. Sours, W. Hensell Harris, Jr., David R. James, Atlanta, for appellant.
Michael J. Bowers, Attorney General, Hendrick, Phillips, Schemm & Salzman, Martin R. Salzman, William D. Flatt, Atlanta, for appellee.
RUFFIN, Judge.
This is the third appearance of the litigation emanating from this highway construction project before us. See Dept. of Transp. v. Fru-Con Constr. Corp., 206 Ga.App. 821, 426 S.E.2d 905 (1992) ("Fru-Con I"); Dept. of Transp. v. Fru-Con Constr. Corp., 207 Ga.App. 180, 427 S.E.2d 513 (1993) ("Fru-Con II").
In conjunction with the construction project, the Department of Transportation (DOT) contracted with multiple prime contractors for various parts of the project, including Holloway Construction Company (Holloway) for the grading work. The contract specified that Holloway would complete its grading work by certain specified dates and that if it did not, it would be liable to DOT for liquidated damages. Holloway failed to complete its grading work within the times specified in its contract, and for this delay, DOT withheld liquidated damages from its final payment to Holloway. Holloway filed suit against DOT, seeking not only to recoup the liquidated damages which had been withheld, but also seeking to recover damages for extended overhead and equipment costs resulting from DOT's alleged breach of contract and for additional work and expense involved in pipe relocation.
In Fru-Con II, supra, DOT answered Holloway's complaint and filed a third-party complaint against another contractor, Fru-Con Construction Company, for expenses DOT incurred resulting from delays attributable to Fru-Con's completion of its work. We held: "[i]nsofar as Holloway seeks to recover for losses and expenses it incurred as the result of delay attributable to Fru-Con's performance of its bridge construction work, Holloway cannot recover from DOT. Paragraph 105.07 of Holloway's contract with *259 DOT provides: `When separate contracts are let within the limits of any one project, each contractor shall conduct his work so as not to interfere with or hinder the progress or completion of the work being performed by other contractors. Contractors working on the same project shall assume all liability, financial or otherwise, in connection with his contract and shall protect and save harmless (DOT) from any and all damages or claims that may arise because of inconvenience, delay, or loss experienced by him because of the presence and operations of other contractors working within the limits of the same project.' This is a clear and unambiguous expression of the mutual intent that DOT was not to assume vicarious contractual liability for any losses and expenses incurred by Holloway as the result of delay in performance of the grading work which was attributable to Fru-Con's bridge construction work. Department of Transp. v. Fru-Con Constr. Corp., 206 Ga.App. 821(1), 426 S.E.2d 905 (1992). [Fru-Con I.] Under the contract, Holloway's remedy for delay attributable to [another contractor's] work was to seek an extension of time so as to excuse its untimely performance of the grading work and thereby avoid liability to DOT for liquidated damages. See Department of Transp. v. Fru-Con Constr. Corp., supra at 823(2), 426 S.E.2d 905. DOT's remedy for unexcused delay of the grading work beyond the dates for completion specified in the contract was the assessment of liquidated damages against Holloway." (Emphasis in original.) Fru-Con II, supra at 180-181, 427 S.E.2d 513.
In the instant case, DOT moved for partial summary judgment on the ground that the damages Holloway sought for extended overhead and equipment costs were attributable solely to delays caused by other contractors. DOT contended it had no liability for such delays by virtue of the aforementioned no damage for delay clause. The trial court granted DOT partial summary judgment, and in Case No. A95A0254, Holloway appeals the grant of partial summary judgment to DOT, and in Case No. A95A0255, DOT appeals from the partial denial of its motion.
Case No. A95A0254
1. Holloway contends the trial court erred in granting partial summary judgment to DOT on its damages claim for extended overhead and equipment costs. Specifically, Holloway contends that DOT breached an implied contractual obligation by failing to control, coordinate, and sequence the work of its other contractors, resulting in Holloway's inability to access the worksite on schedule and complete its own work on time. After reviewing Holloway's amended claim and discovery responses, we find that although framed as a breach of contract claim, Holloway's argument is in reality nothing more than an attempt to seek damages attributable to delays by other contractors.
We have previously held that paragraph 105.07 of Holloway's contract with DOT is a valid "no damage for delay" clause. Fru-Con II, id.; Fru-Con I, supra at 822-823, 426 S.E.2d 905. As such, the trial court properly ruled that DOT has limited its liability for damages due to delay and that any claim for delay due to an implied duty to coordinate or sequence the prime contractors must fail.
2. In four enumerations of error, Holloway contends that because DOT also breached express contractual obligations to coordinate contractors, its claim for damages is not barred by paragraph 105.07 which does not address damages caused by a breach of the contract. But while Holloway points to various contractual provisions demonstrating that DOT controlled certain aspects of the project, none of those provisions expressly delegates to DOT a duty to coordinate or sequence the work of its contractors so that Holloway would not be delayed in completing its work.
The provision Holloway relies upon most heavily for this argument, Paragraph 108.04, does not impose an express obligation as Holloway contends. Rather, in the context of insuring public convenience and minimal interference with traffic for the project's duration, it sets forth requirements the contractors must follow in order to accomplish these goals. The paragraph's last sentence provides that the "rights of the [prime contractors] will be established by the [DOT] in order to secure the completion of the various *260 parts of [the project] in general harmony." Not only does this language fail to expressly impose a duty upon DOT to coordinate and sequence the work of the prime contractors as Holloway claims, but it is well settled that contractual provisions must be read in context and the whole contract "should be looked to in arriving at the construction of any part." OCGA § 13-2-2(4). Looking at the whole contract, we find this provision did not purport to do anything but allow DOT to secure completion of the project so as to minimize traffic snares and inconvenience to the public. Accordingly, the trial court properly granted summary judgment on Holloway's claims that DOT breached an express duty to coordinate and sequence the work of the contractors.
3. Holloway also contends DOT breached its contract by failing to insert intermediate completion dates in its contracts with the other prime contractors. Holloway argues it assumed DOT had done so to ensure the work would be properly sequenced, thus allowing Holloway timely access to the site. This argument is without merit.
Under Fru-Con I, even had the contracts contained intermediate dates, DOT could not guarantee that such dates would be met nor could it be liable for "untimely performance by its various contractors," i.e., failure to meet a deadline. Fru-Con I, supra at 822, 426 S.E.2d 905. Thus, it necessarily follows that the failure to impose such deadlines which Holloway never required as part of its contractcan impose no liability upon DOT. Accordingly, the trial court did not err in granting summary judgment on this claim.
Further, Holloway could simply have insisted upon a provision in the contract requiring intermediate dates and stating that if the dates were breached, any resulting delay affecting Holloway would not fall under the no-damages clause. See, e.g., Dept. of Transp. v. Arapaho Constr., Inc., 257 Ga. 269, 357 S.E.2d 593 (1987). This Holloway did not do.
4. Holloway contends the trial court erred in granting DOT's motion on its claim that DOT breached the contract by changing
the sequence of Holloway's work. The document Holloway cites in support of this argument demonstrates that any decisions relating to changes in sequencing were made by Holloway, not DOT, and were made as a result of delays in the completion of several other projects. Accordingly, the trial court found that Holloway could not recover damages from DOT for failing to make the site available in an orderly and timely fashion and that Holloway's remedy was to seek an extension of time. In light of our holding in Divisions 1 and 2, the trial court properly granted DOT summary judgment on this issue.
5. Holloway contends that DOT breached its contract by threatening to terminate the contract if Holloway suspended its work in order to mitigate its damages and that the trial court erred in granting summary judgment on this claim. But Holloway fails to cite any specific contractual provision which was allegedly breached. Nor does it cite any authority supporting its argument, save a general reference to the proposition that a non-breaching party must always mitigate its losses from a breach. See Court of Appeals Rule 15(c)(2) and (3). Further, because Holloway acquiesced in the alleged breach by continuing to work under the contract, it cannot maintain an action for damages resulting from the alleged breach. See Forehand v. Perlis Realty Co., 198 GaApp. 165(2), 400 S.E.2d 644 (1990). Accordingly, the trial court did not err in granting summary judgment on this claim.
6. Holloway contends DOT is liable to it for losses incurred as a result of DOT's failure to compel timely performance from contractors working on an adjoining construction project. Holloway contends the trial court erroneously interpreted the word "project" and erred in granting summary judgment on this claim. This claim was decided adversely to Holloway in Fru-Con I, supra at 822, 426 S.E.2d 905. Therefore, the trial court did not err in granting DOT summary judgment.
7. Holloway contends the trial court erred in failing to consider the fact that DOT paid another prime contractor delay damages arising out of this project. Holloway cites neither proof of any such payment nor legal *261 authority demonstrating that the trial court should have considered such a payment in its decision. Accordingly, this enumeration presents nothing for review, and the trial court's order on these claims is affirmed. See Court of Appeals Rule 15(c)(2).
Case No. A95A0255
8. In its cross-appeal, DOT contends the trial court erred in denying it summary judgment on that part of Holloway's claim for extended overhead and equipment costs which included damages for design errors and pipe relocation.
In DOT's motion for partial summary judgment, it conceded that material issues of fact remained as to Holloway's claim that it was entitled to $41,406.98 in damages for pipe relocation. Accordingly, DOT's motion did not encompass that claim. But the motion did encompass a separate claim by Holloway for extended overhead and equipment costs, a claim which Holloway contends includes damages for DOT's alleged design errors and failure to make a timely decision about pipe relocation. DOT argues that claim was barred because Holloway failed to request a written extension of time to complete its work as required by Paragraph 108.07 of the contract. The trial court denied DOT summary judgment on this claim because it found Holloway was not seeking damages for delay by other contractors, but rather, for DOT's breach in making design errors. We disagree.
Paragraph 108.07 provides, "[i]f the normal progress of the Work is delayed for reasons beyond his control, the Contractor, shall within fifteen days after the start of such a delay, file a written request to [DOT] for an extension of time setting forth therein the reasons for the delay which he believes will justify the granting of his request." In Fru-Con I, we held that if a contractor wished to recover for liquidated damages withheld by DOT because of the contractor's failure to complete its project on time, it was required to give written notice as a condition precedent. Id. at 823, 426 S.E.2d 905.
Holloway concedes this part of its claim for extended overhead and equipment costs represents delay damages attributable to DOT.
As such, it would be barred if Holloway failed to seek an extension of time for the delays resulting from these problems. Holloway does not contend that it sought such an extension, and we therefore reverse the denial of summary judgment on this claim. Our reversal, however, does not affect the main claim for design errors and pipe relocation, for which DOT admits a genuine issue of fact remains.
9. DOT also contends the trial court erred in denying its motion on Holloway's claim that it breached the contract by failing in good faith to grant Holloway's requests for certain detours and for roads to be temporarily closed. We disagree.
A supplement to the contract entitled "Sequence of Operations and Traffic Control Plan" states that although there are "no planned detours provided for the project[,]... [w]here traffic is permitted through the work as staged, [Holloway] may choose to construct, at [its] own expense, temporary bypasses or detours in order to expedite the work. Plans for such temporary bypasses or detours must be approved by the [DOT] prior to construction. Such bypasses or detours shall be removed promptly when they are, in the opinion of ... [DOT], no longer necessary for the satisfactory progress of the work."
Citing Goldberg, The Owner's Duty to Coordinate Multi-Prime Construction Contractors, A Condition of Cooperation, 28 Emory L.J. 377 (1979), the trial court found that even when the owner of a construction project successfully shifts his risk of loss through a no damage for delay clause, he still has the implied obligation to act in good faith and to cooperate. Id. at 383-385.
Having reviewed the record, including reports from DOT's own engineers stating that detours should be installed for Holloway and, further, that DOT should consider paying for their installation, we agree with the trial court that genuine issues of material fact remain regarding whether DOT breached implied contractual obligations to act in good faith by failing to grant Holloway's request for detours. Accordingly, we find no error in *262 the court's denial of summary judgment on this issue.
Judgments affirmed in part and reversed in part.
BEASLEY, C.J., and POPE, P.J., concur.