A96A0593. APAC-GEORGIA, INC. v. DEPARTMENT OF
TRANSPORTATION.
(472 SE2d 97)

RUFFIN, Judge.

This complex suit over construction of Atlanta's downtown connector comes before us a second time. In its first appearance, *Dept. of Transp. v. APAC-Georgia*, 217 Ga. App. 103 (456 SE2d 668) (1995), we held that special contract specification 105.07 imposed on the Department of Transportation ("DOT") a duty to coordinate and control the work of its prime contractors, which included APAC-Georgia ("APAC"), and that material questions of fact remained as to whether DOT had breached that duty. Id. at 105 (1).

On remand the trial court granted DOT partial summary judgment, holding that APAC could claim no damages for delays on numerous specific components of its work, including designated walls and ramps. Regarding these items, the trial court determined that APAC had not complied with two sections of the contract requiring written notice of delay (§ 108.07) and of claims for additional compensation (§ 105.13), and it considered such notice a condition precedent to APAC's claims. The trial court also rejected any claims APAC had for delay damages resulting from design errors and omissions.

We reverse the trial court's rulings on the issue of notice. Section 105.13 is inapplicable to this case, and a jury should decide whether APAC complied with § 108.07 or, in the alternative, whether DOT waived that notice requirement. Although the trial court correctly rejected any claims resulting from design errors and omissions, we remand that ruling with instruction to clarify the scope of damages which APAC may seek.

1. The trial court erroneously found APAC's compliance with pro-

vision 105.13 to be a condition precedent to the contractor's claims for delay damages. That provision reads in relevant part: "Claims for Adjustments and Disputes: In any case where the Contractor believes that extra compensation is due him, the Contractor shall notify the Engineer in writing of his intention to claim such extra compensation before beginning The Work on which said claim is based. If such notification is not given, in writing, before such work is begun, then the Contractor hereby agrees that no extra compensation is due and waives all rights to claim extra compensation for said Work . . . . If the claim . . . is found to be just, it will be paid as *Extra Work*, as provided in 109.05 for Force Account Work." (Emphasis supplied.) Section 109.05 describes the procedures for payment of materials, labor, and some overhead used in additional work and requires written authorization for this extra work before the Contractor begins it.

This particular contract provision does not expressly apply to damages for delay. Its language requires a contractor to give notice that he will seek extra compensation for *extra* work before *beginning that work*. APAC's claim stems from its *inability* to do the *work called for in the contract* because of DOT's acts and omissions. This provision mirrors a specification found in a manual entitled "Guide Specifications for Highway Construction," published by the American Association of State Highway and Transportation Officials. An article discussing this standard provision makes clear it is intended to address compensation for unforeseen "change orders" in highway contracts, not damages for delay. Vance, 3 Selected Studies in Highway Law, "Enforceability of the Requirement of Notice in Highway Construction Contracts," 1524-N1.

As urged by DOT, APAC's failure to comply with this clause would cause APAC to forfeit any claim for damages caused by DOT's own breach of its duty to coordinate this project. But "[t]he settled public policy of this state is that forfeitures are not favored. While forfeitures are not unlawful, the law does not favor them, and all ambiguities in a contract are to be resolved against their existence. [Cit.]" (Punctuation omitted.) *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767 (1) (b), 768 (386 SE2d 151) (1989). An alternate legitimate construction, limiting this requirement of notice to claims for extra work, prevents the forfeiture. *Roland Well Drilling v. Murawski*, 193 Ga. App. 38, 40 (386 SE2d 872) (1989).

2. The notice requirement of provision 108.07 does apply to APAC's claims for delay damages. *Holloway Constr. Co. v. Dept. of Transp.*, 218 Ga. App. 243, 247 (8) (461 SE2d 257) (1995). The trial court erred, however, in finding as a matter of law that APAC failed to comply with this provision, which reads in part: "E. Extension of Contract Time: . . . . If the normal progress of The Work is delayed for

reasons beyond his control, the Contractor shall, with (sic) fifteen days after the start of such a delay, file a written request to the Engineer for an extension of time setting forth therein the reasons and providing complete documentation for the delay which he believes will justify the granting of his request. . . . If the Engineer finds that The Work was delayed because of conditions beyond the control and without the fault of the Contractor, he may extend the time for completion in such amount as the conditions justify."

In support of its motion on this issue, DOT personnel averred they had received no request for an extension of time on 90 specific items of work, including such items as "Wall Q," "Tie-back Wall 15C," and "Mainline Cleveland to Fair including Lakewood Interchange." In response, APAC produced over 50 letters between its personnel and DOT supervisory personnel, written between 1984 and 1988, giving notice of delays and the need for extensions.

Although these letters may contain no specific mention of the 90 listed items, many of the letters indicated that the specified delays would cause "domino-effect" delays on the entire project. In a letter dated March 25, 1985, for example, APAC requested an extension of time on the entire project and informed DOT that current delays would directly affect other intermediate completion dates and the final completion date. DOT acknowledged this letter and responded, "[w]hen all problems are resolved in this area . . . please re-evaluate your delay and submit your request specif[y]ing what delays you had, and any time extension or other compensation you feel is justified by these delays."

APAC also presented the affidavit of its president, who stated that APAC wrote DOT monthly with updates showing every delay to the project and the amount of delay. "It is undisputed that APAC received time extensions from DOT through the actual completion date, and no contractual liquidated damages were charged to APAC for failure to complete the project on time." *APAC*, 217 Ga. App. at 104. This evidence creates material questions of fact both as to whether APAC complied with the notice provision and whether DOT waived the requirement.

Notice requirements must be reasonably construed. *Batson-Cook Co. v. Loden & Co.*, 129 Ga. App. 376, 378 (1) (199 SE2d 591) (1973). The key issue is whether DOT had actual notice of the delays for which APAC seeks damages. *State Hwy. Dept. v. Hall Paving Co.*, 127 Ga. App. 625, 629 (194 SE2d 493) (1972). The evidence APAC presented appears to be "in the spirit" of the contract provision, presenting the factfinder with a question of whether that notice was sufficient to reasonably comply with § 108.07E. Id. at 628-629.

These facts also present a jury issue as to whether DOT, through its conduct, waived the notice provisions. *Biltmore Constr. Co. v. Tri-*

*State Elec. Contractors*, 137 Ga. App. 504, 508 (1) (224 SE2d 487) (1976). "It is . . . well recognized that a party to a contract may waive contractual provisions for his benefit. [Cits.]" (Punctuation omitted.) *Cho v. South Atlanta Assoc.*, 200 Ga. App. 737, 739 (2) (409 SE2d 674) (1991). " 'Courts will readily seize upon any fact or circumstance growing out of the conduct of the parties, tending to show a waiver of strict compliance, and will seek to avoid the forfeiture and to leave the actual merits of the case open to investigation.' [Cit.]" *Hall Paving*, supra at 629. A jury may determine that DOT, by granting the extensions without request, by assessing no liquidated damages despite APAC's alleged failure to request extensions, and by sending acknowledgment letters such as the one noted above, waived any right it had to insist on APAC's strict compliance with § 108.07E. See *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 50 (1) (D) (305 SE2d 864) (1983); *Hall Paving*, supra; *State Hwy. Dept. v. Hewitt Contracting Co.*, 115 Ga. App. 606, 609 (3) (155 SE2d 422) (1967); OCGA § 13-4-4.

3. APAC also appeals the trial court's order granting the DOT summary judgment on "damages resulting from design or plan errors and omissions." Because this ruling has created some confusion, we take the opportunity to appropriately clarify its scope.

DOT argues, and the trial court properly concluded, that under provisions 102.05 and 104.03 of the contract, APAC had an independent duty to examine the original plans and DOT had the right to change the plans. Although APAC could claim additional compensation for extra work necessitated by plan changes, DOT bore no responsibility to pay *damages* to APAC based on errors in or changes made to the original plans. See *State Hwy. Dept. v. Hewitt Contracting Co.*, 113 Ga. App. 685, 690 (1) (149 SE2d 499) (1966). "In the absence of a contractual duty, there can be no breach of contract." *Dept. of Transp. v. Fru-Con Constr. Corp.*, 206 Ga. App. 821 (1) (426 SE2d 905) (1992) (no guarantee as to timeliness of other contractors' work).[1] That limitation does not, however, prevent APAC from claiming damages associated with any breach of the DOT's duty to coordinate either design changes or correction of design errors.

The "duty to coordinate" means the duty to coordinate worksite activities among prime contractors to ensure timely progress. It is basically a duty to use reasonable measures to ensure all contractors

---

[1] This contract contained a provision expressly placing on DOT the duty to coordinate, but it also contained the standard "no damages for delay" clause discussed in *Holloway Constr. Co.*, 218 Ga. App. at 244 (1), and *Dept. of Transp. v. Fru-Con Constr. Corp.*, 207 Ga. App. 180, 181 (427 SE2d 513) (1993). Because no express provision overrode the "no damages" clause, APAC cannot claim delay damages stemming from a source other than DOT's breach of its duty to coordinate. See *Holloway*, supra.

cooperate to meet scheduling goals. See Goldberg, 28 Emory L. J. 377, 386 (1979), "The Owner's Duty to Coordinate Multi-Prime Construction Contractors, A Condition of Cooperation." "The contracting authority has the duty to invoke its contractual rights to compel cooperation among contractors. Abutting contractors [such as APAC] enter into contracts . . . with the expectation that [the DOT will exercise] supervisory authority . . . to insure cooperation. [Cits.]" *Shea-S&M Ball v. Massman-Kiewit-Early*, 606 F2d 1245, 1251 (D.C. Cir. 1979); see also *Paccon, Inc. v. United States*, 399 F2d 162, 170 (Ct. Cl. 1968) (once owner notified of problem, owner must "direct or require the necessary cooperation from the contractor whose activities were hurting the plaintiff"). Because this duty arises from the owner's duty to allow the contractor access to the worksite, *Goldberg*, supra at 379, it is logically limited to coordinating worksite activities.

Although DOT had a duty to coordinate the work of its prime contractors, that duty did not create any warranty as to the quality of those contractors' work. But when design errors or alterations made changes in the project necessary, DOT's duty to coordinate those changes took effect. As soon as contractors brought problems associated with design changes to DOT's attention, DOT had to use reasonable efforts to compel timely resolution of those problems to ensure that other contractors' work would not be unreasonably delayed. Thus, to the extent APAC seeks damages for delays caused by the defective plans and designs themselves, or for delays necessitated simply by project alterations, those claims are barred. But if APAC can show that DOT unreasonably failed to coordinate the correction of problems associated with design changes, APAC may recover damages for delay resulting from DOT's failure.

*Judgment affirmed in part, reversed in part, and remanded with instruction. McMurray, P. J., and Johnson, J., concur.*

DECIDED MAY 13, 1996 —
RECONSIDERATIONS DENIED JUNE 3, 1996 —

*Smith, Currie & Hancock, Robert B. Ansley, Jr., Fredric W. Stearns, Joseph P. Henner, Frederick L. Wright II*, for appellant.

*Michael J. Bowers, Attorney General, George P. Shingler, Deputy Attorney General, Cathy A. Cox-Brakefield, Assistant Attorney General, Lawson, Davis & Pickren, G. Thomas Davis, Alison H. Price, Greenfield, Bost & Kliros, John W. Greenfield, Sutherland, Asbill & Brennan, William R. Wildman*, for appellee.