A00A0953. STIMSON et al. v. GEORGE LAYCOCK, INC.

(542 SE2d 121)

SMITH, Presiding Judge.

This case arises out of a contract for the construction of a new home entered into by George Laycock, Inc. and Richard and Linda Stimson. The trial court granted summary judgment to Laycock, concluding that the Stimsons' action was barred by the four-year statute of limitation expressed in OCGA § 9-3-30, that the Stimsons did not comply with the terms of a warranty provided by Laycock, and that the Stimsons were not entitled to bad faith attorney fees. We agree with the trial court that the record does not support an award of attorney fees, but we do not agree that the four-year statute of limitation for damage to realty expressed in OCGA § 9-3-30 is applicable here. This issue is controlled by our recent decision in *Mitchell v. Jones*, 247 Ga. App. 113 (541 SE2d 103) (2000). In *Mitchell*, under facts similar to those here, we concluded that certain claims made by homeowners against their builder were subject to the six-year statute of limitation for actions on simple written contracts expressed in OCGA § 9-3-24. We also conclude that genuine issues of fact exist as to whether the parties complied with the terms of the contract. We therefore affirm in part and reverse in part.

In May 1991, the Stimsons entered into a contract under which Laycock was to construct and sell a residence to the Stimsons. The residence was constructed with a synthetic stucco, or an Exterior

Insulation and Finish System (EIFS).[1] Linda Stimson testified that before completion, she knew the exterior of the house was synthetic stucco. Before closing on the purchase on November 22, 1991, the Stimsons provided to Laycock the report prepared by one of two companies that inspected the house. A portion of this report recited as follows: "Flooring in dining room wet — water leak under floor" and "water stain in dining room @ front wall outlet." George Laycock, the president of George Laycock, Inc., later assured the Stimsons "that everything in this report that had been checked as needing attention had been corrected." Richard Stimson testified that "there was a stain in the dining room before we moved and they had repainted over it and told us it was fixed, that that problem was fixed."

Within two months of moving into the house, the Stimsons noticed water leaking into the basement and notified George Laycock, who attempted to repair the leak over a period of approximately two to two and one-half years. Richard Stimson testified that the leakage into the basement stopped after approximately two and one-half years. From the spring of 1994 until October 1997, he did not observe additional water coming into the basement, and he saw nothing leading him to believe "there was leaking" in the house. In late 1997, however, water reappeared in the basement, and the Stimsons contacted the EIFS Resource Center, an organization that "specializes in providing information and expertise related to EIFS and stucco applications." Representatives from the Center conducted an inspection on the residence. John Brennan, who participated in the inspection, testified by affidavit that the Stimsons suffered damage due to improper EIFS installation and noted several problems concerning the installation. Brennan also testified that he inspected the area where Laycock had attempted to repair water leakage into the front wall of the dining room and found the repair to be improper. He stated:

> While attempting to make repairs to stop the water leaking into the front wall of the residence, the builder should have known that the EIFS was installed improperly and taken corrective action to bring the installation to industry and manufacture[r']s standards. The remedial measures taken by the defendant were cosmetic, temporary and improper. The builder did not correct the moisture intrusion problem.

---

[1] Laycock filed a third-party complaint against Mark II Exteriors, Inc., the company that installed the synthetic stucco. Although Mark II filed defensive pleadings, it later filed an "amendment to defensive pleadings and election not to defend" reciting that it elected not to defend the action based on its financial condition and numerous other lawsuits filed against it. The document further recited that Mark II would "enter a consent judgment against it at an appropriate time in the litigation."

Following the EIFS inspection, the Stimsons filed this action against Laycock alleging breach of contract and breach of express and implied warranties contained within the contract. They also sought attorney fees. The trial court granted summary judgment to Laycock on the ground that the action was barred by the four-year statute of limitation for damage to property expressed in OCGA § 9-3-30. The court further concluded that the Stimsons failed to comply with the terms of a builder's warranty provided by Laycock. Finally, the trial court found that the Stimsons were not entitled to recover attorney fees.

1. The Stimsons correctly argue that the six-year limitation period for contract actions expressed in OCGA § 9-3-24 should have been applied to their claims rather than the four-year statute of limitation for damage to property actions set out in OCGA § 9-3-30. See *Mitchell*, supra. See also *Benning Constr. Co. v. Lakeshore Plaza Enterprises*, 240 Ga. 426, 429-430 (241 SE2d 184) (1977); *Hutcherson v. Vanguard Exterminators*, 207 Ga. App. 331, 332 (427 SE2d 828) (1993).[2] The Stimsons filed their complaint within the appropriate limitation period, and we reverse the trial court's ruling with regard to this issue.

Laycock argues that under *Daniel v. American Optical Corp.*, 251 Ga. 166 (304 SE2d 383) (1983), because the nature of the injury suffered by the Stimsons was damage to property, we must apply the four-year statute of limitation expressed in OCGA § 9-3-30. In *Daniel*, the plaintiff sued the defendant manufacturer of safety glasses, seeking damages for strict liability in tort under former Code Ann. § 105-106 (OCGA § 51-1-11 (b)). The issue in that case was whether the two-year statute of limitation for injury to the person applied or whether the ten-year limitation period after accrual of the right to bring an action applied. The Supreme Court concluded that because the nature of the plaintiff's injury was injury to the person, the two-year general statute of limitation expressed in OCGA § 9-3-33 applied. But here, personal injury was not alleged in the complaint. Instead, the Stimsons' claims sound in breach of contract. A six-year statute of limitation for actions on simple contracts is expressly provided for in OCGA § 9-3-24. *Daniel* is not controlling.

We note Laycock's contention that the recent amendment to OCGA § 9-3-30 mandates application of a four-year statute of limitation. As we stated in *Mitchell*, supra, this amendment established a "four-year discovery rule for actions brought for the recovery of dam-

---

[2] We note that *Kemp v. Bell-View, Inc.*, 179 Ga. App. 577, 578 (346 SE2d 923) (1986), which is not relied on by any party on appeal, contains overly broad language that might be construed to impose a four-year statute of limitation on construction contracts. That language is dicta, however, and is not controlling here.

age to a dwelling caused by synthetic exterior siding." Id. at 115, n. 10. Laycock argues that this amendment "makes very clear" the legislature's belief that OCGA § 9-3-30 governs *all claims* presented in a synthetic stucco case." We do not agree. As a statute in derogation of the common law, OCGA § 9-3-30 must be strictly construed. See *Redwine v. Arvaniti*, 83 Ga. App. 203, 206 (63 SE2d 222) (1951). The terms of the amendment itself are related to causes of action arising in tort, not to breach of contract, and as discussed above, an express six-year statute of limitation applies to breach of contract actions. Also, OCGA § 9-3-30 (b) (1) is limited to actions specified in two Code provisions: OCGA §§ 51-1-11 and 9-3-51 (a). Had the legislature intended to provide that the amendment apply to *all* claims regarding improper installation of EIFS, regardless of whether the claims sounded in tort or contract, it could have done so. Instead, the legislature limited application of the amendment to two specific *tort* actions.

2. In addition to applying a four-year statute of limitation, the trial court found that the Stimsons failed to give notice of defects as provided by the one-year warranty provided by Laycock. Because we conclude that issues of material fact exist with respect to the Stimsons' warranty claim, we reverse this ruling.

Assuming, without deciding, that the Stimsons received a written warranty identical to the copy of the warranty in the record before us,[3] genuine issues of material fact exist as to whether the parties complied with the terms of the warranty. The trial court concluded that the Stimsons did not comply with the notice provision of the warranty, which required them to send Laycock a written notice of a covered defect, "with a thorough and complete explanation of the defect" during the warranty period. The trial court concluded that

> [t]here is no evidence, nor any claim, that Plaintiffs gave express notice, written or otherwise, of an alleged problem with the installation of the EIFS on their house within a year of closing. In fact, no express notice of any alleged EIFS problem was given to Defendant until one day prior to filing this lawsuit, almost six years after closing.

The Stimsons did not give specific notice of an EIFS defect. But the record contains evidence that George Laycock himself knew little about problems associated with EIFS at the time the home was con-

---

[3] If a jury should decide that the Stimsons did not receive a written warranty but that their warranty claim is based instead on an oral promise by George Laycock, "an oral one-year warranty on a house which was never reduced to writing [is] unenforceable." *Grant v. Aulicky*, 161 Ga. App. 817, 818 (1) (290 SE2d 107) (1982).

structed, and we cannot agree that the Stimsons, as ordinary purchasers, were required to know that their leakage problems may have been attributable to improper EIFS installation, a rationale that appears to underlie the trial court's conclusion. Laycock *did* receive written notice of the water stain in the dining room in the inspection report provided by the Stimsons. And some evidence was presented by the Stimsons that this leak may have been caused by improper EIFS installation and that Laycock should have known this. Under these circumstances, whether the Stimsons gave adequate notice of a defect to Laycock is a question of fact for the jury.

Furthermore, parties may waive contractual obligations through their conduct. *APAC-Ga. v. Dept. of Transp.*, 221 Ga. App. 604, 605-607 (2) (472 SE2d 97) (1996). Laycock attempted to repair the leakage problem into the Stimsons' basement for over two years, even though the record does not show that they provided *written* notice of this defect. Despite a possible lack of written notice, Laycock obviously had actual notice of a defect related to leakage. Some question consequently exists as to whether Laycock waived the notice requirement contained in the warranty. "Courts will readily seize upon any fact or circumstances growing out of the conduct of the parties, tending to show a waiver of strict compliance, and will seek to avoid the forfeiture and to leave the actual merits of the case open to investigation." (Citation and punctuation omitted.) Id. at 607 (2).

3. The Stimsons also contend that the trial court erred in concluding that Laycock "was able to identify the source of the leak and fixed" it. George Laycock testified in his affidavit that he repaired the leak. And indeed, the Stimsons noticed no leakage into their basement from the spring of 1994 — after Laycock had attempted to repair the leak for over two years — until October 1997. But George Laycock also testified on deposition that he was never able to identify the source of the water intrusion. Under these circumstances, we conclude that questions of fact exist concerning this issue as well.

4. The Stimsons' final contention is that a jury question exists as to whether Laycock acted in bad faith authorizing an award of attorney fees. We do not agree. While the record shows that Laycock may have breached the contract, the Stimsons have not shown that Laycock "acted through ill will or furtive design with regard to the performance of the contract." (Citation and punctuation omitted.) *Williams Tile &c. Co. v. Ra-Lin & Assoc.*, 206 Ga. App. 750, 752 (5) (426 SE2d 598) (1992). The record contains no evidence showing that Laycock made the contract "in bad faith or that [Laycock] breached it as a result of some sinister motive." (Punctuation omitted.) Id. An award of attorney fees based on bad faith therefore cannot be sustained, id., and we affirm the trial court's ruling in this regard.

*Judgment affirmed in part and reversed in part. Johnson, C. J.,*

*and Phipps, J., concur.*

DECIDED NOVEMBER 2, 2000 —
RECONSIDERATION DISMISSED NOVEMBER 28, 2000 —

*Charles F. Peebles, Lane R. Frostbaum*, for appellants.
*Pursley, Howell, Lowery & Meeks, John C. Amabile*, for appellee.
*Bordeaux & Abbot, Thomas C. Bordeaux, Jr., Eugene C. Brooks IV, Christopher M. Kessinger*, amici curiae.