## A06A1673. PILLAR DEVELOPMENT, INC. v. FUQUA CONSTRUCTION COMPANY, INC. et al.

(645 SE2d 64)

ANDREWS, Presiding Judge.

Pillar Development, Inc. (Pillar) entered into an agreement to sell 81 residential subdivision lots to Fuqua Construction Company, Inc. and Newman Homes, Inc. (jointly referred to as FCC/NH) for $90,000 per lot representing a total sales price of $7,290,000. After FCC/NH refused to close on the agreement, Pillar retained FCC/NH's $150,000 earnest money deposit as liquidated damages pursuant to the agreement. FCC/NH sued Pillar and the escrow agent[1] seeking to recover the earnest money and claiming that its refusal to close was justified by Pillar's breach of the agreement. Pillar answered and counterclaimed asserting that FCC/NH breached the agreement by refusing to close and seeking award of the earnest money as reasonable liquidated damages under the agreement.[2] The trial court granted FCC/NH's motion for summary judgment on their claims against Pillar, and denied Pillar's motion for summary judgment on its counterclaim. Pillar appeals from these rulings, and for the following reasons, we reverse.

The agreement for sale of the 81 subdivided lots by Pillar to FCC/NH provided in section 7.1.10 that, prior to closing, Pillar would develop the lots so that they "will be subdivided and platted to permit the construction of single family homes in accordance with all applicable rules, regulations, ordinances and requirements of each governmental authority having jurisdiction over the Property." In addition to setting forth Pillar's responsibility for development of streets, drainage, water systems and all utilities necessary for the construction of single family homes on the lots, the agreement also contained the following provisions with respect to developing sewer service for the lots:

> [FCC/NH] hereby acknowledges that the Subdivision shall not be serviced by public sewer but by individual septic systems. [Pillar] has received approval from the Fulton County Health Department for such systems and shall have no further responsibility with regard to sewer service or systems for the Subdivision (except the Amenity Feature).

---

[1] The earnest money was held by the escrow agent, ReMax Commercial Atlanta, LLC (ReMax), which distributed the earnest money to Pillar.

[2] ReMax also answered and brought a counterclaim against FCC/NH and a cross-claim against Pillar, neither of which is at issue in this appeal.

[FCC/NH] hereby acknowledges that development, construction and installation of septic systems shall be the responsibility and at the expense of [FCC/NH].

Because the property at issue is located within the jurisdiction of Fulton County in an area with no access to the public sewer system, the County will not permit the construction of a single family home on any lot in the subdivision unless the Fulton County Heath Department (FCHD) has approved the installation of a septic system on that lot. Approval is obtained with respect to each individual lot by providing the FCHD with evidence, including a satisfactory water percolation test, showing that the lot is suitable for installation of a septic system.

Prior to the closing date, FCC/NH became concerned about whether Pillar had acquired approval from the FCHD for installation of a septic system on all the individual lots. Based on these concerns, FCC/NH asserts that it orally asked Pillar to provide a written guaranty that Pillar would buy back any lot on which FCC/NH could not obtain a building permit after the closing because the lot lacked septic system approval from the FCHD, and that Pillar agreed to bring such a guaranty to the closing. According to Pillar, when FCC/NH made the request for the buy-back guarantee two days before the closing date, Pillar considered the request but agreed to provide the buy-back guarantee only if FCC/NH would agree to renegotiate the purchase price of the lots. No renegotiation occurred. At the closing, Pillar presented a proposed letter agreement to FCC/NH stating that it had received "development approval" from the FCHD for the use of septic systems on the lots; that it understood an "additional approval" must be obtained from the FCHD for use of a septic system on each individual lot, and that, with respect to any lot on which FCC/NH was unable to obtain such additional approval, Pillar would "assist and support your efforts to obtain such approval." The proposed letter agreement was not adopted. Because FCC/NH suspected that Pillar had not obtained approval from the FCHD for installation of septic systems on all the individual lots, and because Pillar refused to provide the requested buy-back guarantee, FCC/NH refused to close on the agreement for purchase of the lots.

FCC/NH contends that the agreement unambiguously sets forth the intent of the parties that it was part of Pillar's development duty prior to closing to obtain approval from the FCHD for the installation of a septic system on each of the 81 lots, so that after closing FCC/NH could immediately obtain permits from Fulton County to construct single family homes with septic systems on the lots. Pillar contends to the contrary that the agreement did not require it to obtain FCHD approval for the installation of septic systems on each individual lot,

but only required it to obtain general FCHD approval for use of septic systems on the lots. Nevertheless, the record shows that, prior to closing, Pillar had obtained FCHD approval for the installation of septic systems on 79 or 80 of the individual lots. Discovery conducted during the subsequent litigation showed that, at the time of closing, Pillar had failed to obtain FCHD approval for the installation of septic systems on one or two of the lots.

We need not determine whether this dispute over the intent of the agreement can be resolved as a matter of law by the rules of contract construction, or whether it presents a factual issue to be resolved by a trier of fact. Even if we assume, as FCC/NH claims, that Pillar had a duty under the agreement to obtain septic system approval on all the lots, and that its failure to do so prior to closing breached the agreement, for FCC/NH to base its refusal to close and demand for refund of earnest money on this breach it had to show compliance with the written notice requirements of the agreement relating to the breach. Where a contract contains provisions requiring written notice of a claim for breach, "[t]he failure to give notice as required or to show waiver by [the party entitled to notice] is an independent bar to the maintenance of a successful cause of action on the contract." *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 369 (203 SE2d 587) (1973). Moreover, oral notice is not sufficient where written notice is required. Id.

If FCC/NH had good reason to believe that Pillar breached the agreement by failing to obtain septic system approvals from the FCHD, it had a duty under the agreement to give Pillar written notice of the breach before refusing to close. If Pillar's failure breached the seller's representations or warranties contained in section 7.1 of the agreement, as FCC/NH claims, then section 7.2 specifically provides:

> In the event any of the warranties and covenants contained [in section 7.1] are not true on the Closing Date, [FCC/NH] . . . shall be entitled either: (a) to terminate this Agreement by written notice to [Pillar] whereupon the Earnest Money shall be returned to [FCC/NH], and no party hereto shall have any further rights or obligations hereunder; or (b) to waive such untrue warranties and covenants and proceed with Closing under the terms and conditions of this Agreement with no reduction in the Purchase Price.

In addition to section 7.2, the agreement provides in section 10 that, in the event of a default or breach by FCC/NH or Pillar, the defaulting party shall be entitled to written notice of the specific default or breach and of a 15-day period after receipt of the notice to cure the default or breach. Section 10 further provides that, if the

default or breach is not corrected by the defaulting party within the 15-day period, then "an event of default shall have occurred" and the nondefaulting party shall be entitled to the following rights and remedies: (1) If Pillar defaulted, then FCC/NH was entitled to either terminate the agreement and receive a refund of the earnest money, or seek specific performance; (2) If FCC/NH defaulted, then Pillar was entitled to retain the earnest money as liquidated damages and render the agreement null and void, or seek specific performance.

FCC/NH does not contend that it gave notice under section 10, but it does contend that it complied with the notice provisions of section 7.2 when it mailed a letter to Pillar's attorney on November 9, 2001, demanding a refund of the earnest money and informing Pillar that the agreement was terminated because Pillar was in violation of section 7.1 on the closing date. The plain language of section 7.2 would have required FCC/NH to either terminate the agreement by written notice of breach to Pillar on the October 19, 2001 closing date set forth in the agreement, or waive the breach and proceed with the closing on that date. But in this case, when FCC/NH refused to close at the October 19, 2001 closing, Pillar provided written notice to FCC/NH at the closing that, pursuant to section 10 of the agreement, FCC/NH's refusal to close on the October 19 closing date placed it in default and that it had 15 days to cure the default. When the notice of breach or default and 15-day opportunity to cure provisions of section 10 are construed in conjunction with the provisions of the agreement setting the closing date for October 19, 2001, we conclude that the only reasonable interpretation of these provisions is that the parties intended under the circumstances that the initial closing date be extended for up to 15 days to give FCC/NH an opportunity to cure the asserted breach or default by closing on the agreement no later than November 4, 2001. *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms*, 276 Ga. App. 862, 866 (625 SE2d 57) (2005) (no ambiguity where contract terms considered together are capable of only one reasonable interpretation). When FCC/NH refused to close by November 4, 2001, the agreement expired by its own terms on that date. *Stone Mountain Realty v. Wright*, 155 Ga. App. 858, 861 (273 SE2d 228) (1980). It follows that it was not possible for FCC/NH to give notice of breach and terminate the agreement under section 7.2 on November 9, 2001, after the extended closing date had passed and the agreement had expired.

Because FCC/NH failed to comply with provisions of the agreement requiring written notice of breach, this failure barred it from relying on Pillar's alleged breach of the agreement as a basis for its refusal to close and demand for refund of the earnest money. *Orkin Exterminating Co.*, 130 Ga. App. at 369. Accordingly, the trial court erred by granting summary judgment in favor of FCC/NH on its claim

seeking refund of the earnest money on the basis that FCC/NH was not required to close because Pillar breached the agreement. Pillar, however, complied with the written notice provisions in section 10 of the agreement by notifying FCC/NH that its refusal to close placed it in breach or default of the agreement and that it had 15 days to cure the breach or default. When FCC/NH refused to close after the 15-day period expired, Pillar was entitled under section 10 to consider the agreement null and void and to retain the earnest money as liquidated damages. Accordingly, Pillar was entitled to summary judgment on its claim that FCC/NH was in breach or default of the agreement by refusing to close. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

As to Pillar's claim that its retention of $150,000 in earnest money was a reasonable estimate of damages and not an unenforceable penalty, the enforceability of this amount of liquidated damages pursuant to the agreement was a question of law for the trial court, and the burden was on FCC/NH, as the defaulting party, to show that the provision was a penalty. *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989). Because the trial court erroneously granted summary judgment in favor of FCC/NH and against Pillar on their competing claims regarding breach of the agreement, the court necessarily failed to reach the issue of whether the liquidated damages provision was reasonable or amounted to a penalty. Accordingly, the case is remanded to the trial court for consideration of this issue.

*Judgment reversed and case remanded. Barnes, C. J., and Ellington, J., concur.*

DECIDED MARCH 27, 2007 —
RECONSIDERATION DENIED APRIL 11, 2007 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Merritt & Tenney, David E. Spalten, William H. McLean IV*, for appellant.

*Alan L. Newman*, for appellees.

A06A1837. BKJB PARTNERSHIP et al. v. MOSEMAN.
A06A1838. GITNER v. BKJB PARTNERSHIP et al.
(644 SE2d 874)

ANDREWS, Presiding Judge.