**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 30, 2014**

# In the Court of Appeals of Georgia

A14A0874. DEL LAGO VENTURES, INC. v. QUIKTRIP MI-046
   CORPORATION.

MILLER, Judge.

Ofer Bar Lev and Kofer Properties, Inc. (collectively "the Sellers") and QuikTrip Corporation ("QuikTrip") entered into a real estate purchase agreement for a piece of land in Cobb County. QuikTrip wanted to purchase the property in order to build a gas station there. Thereafter, the Sellers entered into a "backup contract" to sell the same property to Del Lago Ventures, Inc. ("Del Lago"), a subsidiary of QuikTrip's competitor, RaceTrac Petroleum, Inc. After the Sellers sold the property to QuikTrip, Del Lago sued the Sellers and QuikTrip for specific performance, breach of contract, injunctive and declaratory relief, and attorney fees, asserting that the contract between the Sellers and QuikTrip had terminated, giving effect to the backup

contract between the Sellers and Del Lago. QuikTrip counterclaimed for declaratory judgment, defamation of title, and attorney fees.

QuikTrip filed a motion for summary judgment and Del Lago filed a cross-motion for partial summary judgment. The trial court denied Del Lago's motion for summary judgment and awarded summary judgment to QuikTrip on all claims asserted by Del Lago. The trial court also declared QuikTrip the owner of the property.

Del Lago appeals the trial court's grant of summary judgment to QuikTrip, contending that genuine issues of material fact remain as to whether QuikTrip terminated its contract with the Sellers and whether forged signatures invalidated the QuikTrip contract.[1] For the reasons that follow, we reverse in part and affirm in part.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation

---

[1] Del Lago does not appeal the trial court's denial of its motion for partial summary judgment.

2

omitted.) *Campbell v. The Landings Assn., Inc.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

So viewed, the record shows that QuikTrip was interested in buying several adjoining parcels of land located at the corner of Windy Hill and Austell Roads, some of which were owned by Bar Lev individually and some of which were owned by Kofer Properties. Bar Lev is the sole owner of Kofer Properties. On January 11, 2010, Bar Lev entered into a real estate contract with QuikTrip. The contract provided for a 270-day inspection period, beginning on the effective date of the contract, and for closing to take place within 15 days after the expiration of the inspection period.

The termination provision of the contract between Bar Lev and QuikTrip stated:

> In the event [QuikTrip] determines in its sole and absolute discretion that the Property is not suitable for [QuikTrip]'s intended use within the Inspection Period, [QuikTrip] may elect to terminate this Contract by written notice to [the Sellers] and Escrow Agent. If this Contract is terminated . . . neither party shall have any further obligations hereunder. Upon termination, the escrow agent was required to immediately release $100 to the Sellers and the balance of the earnest money deposit to QuikTrip.

In February 2010, QuikTrip and Bar Lev amended the original contract to add Kofer Properties as a seller and reset the effective date of the contract – from which the inspection period would begin to run – to the date of the amendment. In November 2010, QuikTrip and the Sellers entered into a second amendment to the contract and again altered the effective date.

On July 22, 2011, the Sellers entered into a contract to sell the same property to Del Lago in case the deal with QuikTrip fell through. The Del Lago contract provided:

> [Del Lago] agrees and acknowledges that a third party has contracted to purchase the Contract Property (or portions thereof) from [the Sellers] and that, unless and until [the Sellers] (or such third party) terminates such existing contract in accordance with its terms, (i) this Contract shall not be effective and (ii) neither party shall have any obligations hereunder. Automatically and immediately upon any such termination of the existing contract, this Contract shall be in full force and effect and binding . . . . Without limiting the foregoing, in the event such third party acquires the Contract Property pursuant to the terms of its contract, this Contract shall be null, void, and of no further force and effect. It is the intent of [the Sellers] and [Del Lago] that this Contract constitutes a "backup contract" to be effective if and only if the third party purchaser fails to purchase the Contract Property in accordance with the terms of its contract with [the Sellers].

4

On August 8, 2011, near the end of the 270-day inspection period, Bar Lev met with Chad Trotter, a real estate manager with QuikTrip, at Bar Lev's office. Trotter, who Bar Lev believed had the authority to bind QuikTrip, wanted to again extend the effective date on the contract and Bar Lev indicated that he could only agree to an extension if QuikTrip increased the purchase price.

Trotter threatened to terminate the contract if Bar Lev would not agree to extend the effective date and showed Bar Lev a termination letter that he had drafted on behalf of QuikTrip. Trotter deposed that he planned to use the letter as a negotiating tactic. The letter indicated that Trotter had copied, via email, various people at QuikTrip and the escrow agent, although Trotter deposed that he had *not* sent a copy of the letter to the escrow agent. Michael Schaff, the Sellers' escrow agent, never received written notice of termination and never disbursed any of the earnest money.

Trotter left the termination letter in Bar Lev's office, but later called Bar Lev and said that he did not have the authority to terminate the contract and the contract was not terminated. Generally, QuikTrip's real estate director, Craig Williams, had to approve contract terminations. When Williams learned of the termination letter, he told Trotter to retrieve the letter, and Trotter resigned from QuikTrip.

On the evening of August 8, Bar Lev contacted Meredith McElveen, a real estate representative with Del Lago, and told her that Trotter had left a letter terminating the QuikTrip contract on Bar Lev's desk. McElveen understood this to mean that the QuikTrip contract was terminated and Bar Lev told McElveen that he would deliver the termination letter to her the next day.

On August 10, Del Lago recorded a "Memorandum of Contract" in Cobb County, asserting that the backup contract became effective on August 8, upon termination of the QuikTrip contract. On August 9, 2011, QuikTrip and the Sellers entered into a third amendment, increasing the purchase price and setting a closing date on September 21, 2011. The third amendment also provided:

> Buyer and Seller agree and confirm that upon the execution of this Third Amendment (a) the termination letter Buyer provided to Seller on August 8, 2011 is null and void and (b) this Contract is and has always remained in full force and effect based upon the terms and conditions set forth in the original Contract as amended by the First, Second and Third Amendments.

QuikTrip and the Sellers subsequently entered into a fourth amendment extending the closing date to September 27, 2011. On September 27, 2011, the Sellers conveyed the

6

property to QuikTrip. Following the sale to QuikTrip, Del Lago filed suit, leading to the instant appeal.

1. Del Lago contends that the trial court erred in granting summary judgment on its claims against QuikTrip and the Sellers because there is a genuine issue of material fact regarding whether Trotter's delivery of the termination letter constituted substantial compliance with the termination provisions of the QuikTrip contract. We agree.

"The first rule of contract construction is to determine the parties' intent, and if the language is clear the contract shall be enforced according to its clear terms. In fact, no construction is even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." (Citation omitted.) *Carroll v. Bd. of Regents of the Univ. System of Ga.*, 324 Ga. App. 598, 600 (1) (751 SE2d 421) (2013).

(a) Standing.

As an initial matter, QuikTrip contends that Del Lago lacks standing to challenge its contract with the Sellers since Del Lago was neither a party to the contract nor a third-part beneficiary as required under OCGA § 9-2-20. The trial court declined to rule on the issue of Del Lago's standing in granting QuikTrip's motion

for summary judgment. However, since Del Lago asserted its rights to the disputed property pursuant to its own contract with the Sellers, it had standing, under OCGA § 9-4-2, to seek a declaration of its rights, if any, to the property. See *Zitrin v. Ga. Composite State Bd. of Med. Examiners*, 288 Ga. App. 295, 298 (2) (653 SE2d 758) (2007) (party in a position of uncertainty or insecurity has standing to seek declaratory judgment).

(b) Substantial compliance.

"The general rule in determining contract compliance is substantial compliance, not strict compliance, and this rule applies to a contract's termination clause as well." (Citations and punctuation omitted.) *Rome Healthcare LLC v. Peach Healthcare System, Inc.*, 264 Ga. App. 265, 272 (5) (590 SE2d 235) (2003).

Under the termination clause of the QuikTrip contract, QuikTrip could terminate the contract during the inspection period with written notice to the Sellers and the escrow agent, Schaff. The undisputed facts show that Trotter gave the Sellers written notice of termination on August 8, 2011, and there are questions of fact as to whether Trotter had the actual or apparent authority to terminate the contract. See OCGA § 10-6-1.

8

QuikTrip contends that the termination of a real estate purchase contract requires strict compliance and, as a result, the QuikTrip contract was not terminated because QuikTrip never gave the escrow agent written notice of termination as required by the termination clause. "The cardinal rule of contract construction is to ascertain the intention of the parties." (Footnote omitted.) *Thornton v. Kumar*, 240 Ga. App. 897, 898 (525 SE2d 735) (1999). Here, the QuikTrip contract clearly provided that QuikTrip could terminate the contract by giving written notice to both the Sellers and the escrow agent. Nevertheless, substantial compliance is the general rule. *Rome Healthcare*, supra, 264 Ga. at 272 (5). Strict compliance is the exception, applying to "cases concerning termination notices that [result] in forfeiture of real property rights under a lease or easement, or revocation of a surety." *DI Uniform Svcs., Inc. v. United Water Unlimited Atlanta LLC*, 254 Ga. App. 317, 323 (2) (562 SE2d 260) (2002). None of these circumstances are present here, as termination of the contract would not have resulted in the forfeiture of real property rights under a lease or easement or the revocation of a surety.

The fact that this Court has, in other cases, determined that one party's attempt to terminate a real estate purchase agreement was ineffective does not transform the substantial compliance requirement into one of strict compliance. See, e.g., *Thornton*,

9

supra, 240 Ga. App. at 899 (termination ineffective where notice not sent to one seller and notice sent to another seller at wrong address). Moreover, substantial compliance with notice provisions may suffice as long as the relevant information is communicated. *Wallick v. Period Homes, Ltd.*, 252 Ga. App. 197, 203 (3) (555 SE2d 863) (2001). Here, the termination letter made clear to the Sellers that QuikTrip was terminating the contract and Bar Lev relayed that information to others. Thus, viewing the facts in the light most favorable to Del Lago, there is a genuine issue of material fact regarding whether Trotter's actions constituted substantial compliance with the termination provision of the QuikTrip contract.

In so holding, we note that the subsequent amendments to the QuikTrip contract and the later sale of the property to QuikTrip on September 27, 2011, are immaterial since the Del Lago contract became effective "[a]utomatically and immediately" upon termination of the QuikTrip contract. Accordingly, the trial court erred in granting summary judgment to QuikTrip.

2. Del Lago also contends that the trial court erred in granting summary judgment to QuikTrip because Bar Lev forged his mother's name on the amendments to the QuikTrip contract, voiding the contract. While there is a genuine issue of

10

material fact as to whether the QuikTrip contract was terminated, we disagree that the QuikTrip contract was voided based on the signatures to the amendments.

"Assent to the terms of a contract may be given other then by signatures." (Citation omitted.) *Cochran v. Eason*, 227 Ga. 316, 318 (1) (180 SE2d 316) (1971).

> The object of securing signatures of the parties to a written contract is, of course, to take it out of the Statute of Frauds and to afford mutuality so that it may be enforced. But this is not the only manner of obtaining mutuality. If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound.

(Citation and punctuation omitted.) *Gruber v. Wilner*, 213 Ga. App. 31, 34-35 (2) (443 SE2d 673) (1994).

In 2007, Ofer Bar Lev's mother, Lea, who lived in Israel, was an officer and agent for Kofer Properties. She died in 2010. On the first, second, and third amendments to the QuikTrip contract, Lea was listed as the Chief Executive Officer and Chief Financial Officer of Kofer Properties and Bar Lev was listed as the Secretary. Bar Lev signed both his name, individually and as Secretary of Kofer Properties, and his mother's name, as an officer of Kofer Properties, to the first, second, and third amendments to the QuikTrip contract.

11

On September 9, 2011, Bar Lev took over as Chief Executive Officer, Chief Financial Officer and agent of Kofer Properties. On September 20, 2011, Bar Lev signed the fourth amendment to the contract both individually and on behalf of Kofer properties. The fourth amendment ratified and confirmed the contract and the previous amendments. The undisputed facts show that the property sold was owned by either Bar Lev or Kofer Properties, which is wholly owned by Bar Lev, and Bar Lev had the authority to sign contracts for Kofer Properties.

(a) Standing.

As an initial matter, despite Del Lago's standing to seek a declaratory judgment under OCGA § 9-4-2 based on its competing interest in the property, Del Lago does not have standing to challenge Kofer Properties' signatures on the QuikTrip contract because Del Lago was not a party to the QuikTrip contract and, therefore, cannot attack its validity. See OCGA § 9-2-20; see also *Morris v. Stillwell*, 257 Ga. 3, 4 (354 SE2d 133) (1987) (although heir was entitled to challenge authority to sell real property under his mother's will, he had no standing to challenge validity of sales contract because he was not a party thereto).

(b) Ratification.

Moreover, despite the genuine issue of material fact as to whether QuikTrip terminated its contract, Kofer Properties ratified the QuikTrip contract and its prior amendments when Bar Lev signed the fourth amendment. See *Hendrix v. First Bank of Savannah*, 195 Ga. App. 510, 511 (1) (394 SE2d 134) (1990) (principal ratifies any unauthorized act by accepting and retaining the benefits of the act with full knowledge of the facts); see also OCGA §§ 10-6-51; 10-6-52. Under these facts, where Kofer Properties clearly assented to the contract, any irregularities in the signatures are irrelevant.

In sum, we reverse the trial court's grant of summary judgment to QuikTrip because there is a genuine issue of material fact as to whether Trotter's delivery of the termination letter constituted substantial compliance with the termination provisions of the QuikTrip contract, however we affirm the trial court's holding that the QuikTrip contract was not voided due to forgery.

*Judgment reversed in part and affirmed in part. Doyle, P. J., and Dillard, J., concur.*