[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14942
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-03581-ODE

TRIAD CONSTRUCTION CO., INC.,

Plaintiff-Appellant,

versus

ROBERT HALF INTERATIONAL, INC.,
d.b.a. Accountemps,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 7, 2017)

Before JULIE CARNES, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Triad Construction Co., Inc., ("Triad") appeals the district court's grant of

summary judgment over its breach of contract and tort claims against Robert Half

International, Inc., d.b.a. Accountemps ("Robert Half"). Having given thorough consideration to both parties' arguments, we affirm the district court.

## I. FACTS

This dispute arises out of a fraud perpetrated against Triad. The fraud involved Nicole Crisp ("Crisp"), a former employee of Triad, and LaTreisha McKay ("McKay"), neither of whom is party to this suit. Robert Half provides temporary staff to third parties, and its Accountemps division specializes in the placement of staff in accounting and financial positions.[1] McKay was assigned by Robert Half to work as a "full charge bookkeeper" for Triad when the fraud occurred.

Prior to her employment with Robert Half, McKay had been arrested and charged with fraud. Because she was a first-time offender, McKay was placed in the Cobb County District Attorney's Pretrial Diversion Program. When she successfully completed this program, a nolle prosequi was entered in her case. McKay testified that she had disclosed her arrest and the charges to a Robert Half employee during the application process.[2] It is undisputed that McKay did not discuss the substance of the charges with Robert Half employees. Robert Half

---

[1] From this point on, this opinion will use "Robert Half" to refer to both Robert Half and Accountemps.

[2] A claim that Robert Half strenuously denies.

2

contracted with a third party to provide a criminal background check on McKay. The background report did not show any criminal history.

McKay was placed at Triad in January 2008. In May 2011, Triad reported to Robert Half that it wanted to terminate McKay's placement because the quality of her work had deteriorated. After a transition period, McKay left Triad in August 2011. On March 14, 2012, McKay's replacement (who was also on assignment from Robert Half) discovered an unauthorized transfer from Triad's bank account to Crisp's. Further investigation revealed a string of unauthorized transfers to Crisp's account between April 2008 and March 2012. Triad promptly terminated Crisp's employment and notified the Clayton County police. Crisp was prosecuted and pled guilty. Triad believed that McKay was involved in the fraud at some point before March 29, 2012. This belief was confirmed when Crisp, at her sentencing hearing in May, 2012, implicated McKay.

On October 30, 2013, Triad filed suit against Robert Half, asserting various breach-of-contract claims, tort claims, and claims for attorneys' fees arising out of McKay's fraud. McKay's assignment to Triad was covered by "General Conditions of Engagement" ("the General Conditions"), which contained a notice clause. This clause disclaimed Robert Half's liability for "any claim related to work performed" unless Triad provided notice of such a claim within ninety days

3

of the termination of McKay.  In responding to Robert Half's motion for summary judgment, Triad pointed to a letter that it sent Robert Half in January 2013 as satisfying the notice requirement.  The district court, relying on the notice provision, granted summary judgment for Robert Half on all claims.

Triad then filed a motion for reconsideration.  Triad attached to this motion a letter demonstrating that it had given Robert Half written notice of its potential claims in November 2012.  The district court denied this motion for reconsideration, and Triad now appeals.

## II.  ANALYSIS

This is an appeal from the district court's grant of summary judgment and denial of a motion for reconsideration in a diversity case.  The district court had jurisdiction pursuant to 28 U.S.C. § 1332 (2012), and we have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review a grant of summary judgment de novo, examining the evidence in the light most favorable to the non-moving party and affirming if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'"  Schwarz v. City of Treasure Island, 544 F.3d 1201, 1211 (11th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  "This court reviews the denial of a Rule 59 motion for an abuse of discretion."  Lockard v. Equifax, Inc., 163 F.3d 1259,

4

1267 (11th Cir. 1998) (citing O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992)).

A. Substantial Compliance

Triad's main argument on appeal is that its claims were not barred by the notice provision.[3]  This argument fails.

The notice provision that Robert Half sent to Triad reads as follows:

It is understood that you are responsible for reporting any claim to us in writing during or within ninety (90) days after the engagement. Under no circumstances will [Robert Half] be responsible for any claim related to work performed unless you have reported such claim in writing to us within ninety (90) days after the termination of the engagement.[4]

Triad terminated McKay's engagement on August 19, 2011, for performance-related reasons unconnected to the fraud.  Triad discovered the fraud on March 14, 2012, and began to suspect McKay's involvement between then and March 29, 2012.   Triad orally notified Robert Half of McKay's involvement and "kept

---

[3] In the district court, Triad also argued that the notice provision was not enforceable under Georgia law.  Triad has waived that argument on appeal.  Triad lists the question of the notice provision's enforceability in its statement of issues on appeal.  Triad also mentions in passing in its argument section that it "disputes" the provision's enforceability.  However, this is not enough to raise the issue on appeal or to adequately brief this Court as to how Triad thinks that the district court might have erred.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it, 'for instance by devoting a discrete section of his argument to those claims.'" (quoting Cole v. U.S. Attorney Gen., 712 F.3d 517, 530 (11th Cir. 2013))).

[4] It is undisputed that Patrick Mehan, one of Triad's principals, acceded to the notice provision by signing McKay's timesheets.

5

[Robert Half's management] in the loop" during their investigation into the fraud. However, at summary judgment, the earliest evidence of written communication to Robert Half provided by Triad was a letter dated January 28, 2013 — at least 305 days after Triad began to suspect McKay's involvement, and 251 days after Crisp implicated her at her sentencing hearing.[5]

Like the district court, we begin by accepting for the purpose of argument that Triad's initial delay in providing notice — for the period between McKay's termination and Triad's suspicion of her involvement in the fraud — was justified. Even then, the evidence at summary judgment (or, for that matter, the evidence on Triad's motion for reconsideration) did not establish any written communication from Triad to Robert Half within the ninety-day period.

Under Georgia law, "[t]he general rule in determining contract compliance is substantial compliance, not strict compliance." Del Lago Ventures, Inc. v. QuickTrip Corp., 330 Ga. App. 138, 142, 764 S.E.2d 595, 598 (2014) (quoting Rome Healthcare LLC v. Peach Healthcare Sys., Inc., 264 Ga. App. 265, 272, 590 S.E.2d 235, 241 (2003)); see also O.C.G.A. § 13-4-20 (West 2010).  Substantial compliance is also the general rule for notice provisions.  See Del Lago, 330 Ga.

---

[5] Along with its motion for reconsideration, Triad produced a letter to Robert Half dated November 28, 2012, that communicates that Triad was contemplating claims against Robert Half.  This was at least 244 days after Triad began to suspect McKay's involvement and 190 days after Crisp implicated her at the sentencing hearing.

6

App. at 144, 764 S.E.2d at 599.  However, substantial compliance is <u>not</u> the rule when a contract clearly establishes written notice as a condition precedent to suit. <u>See</u> <u>Pillar Dev., Inc. v. Fuqua Constr. Co., Inc.</u>, 284 Ga. App. 858, 860, 645 S.E.2d 64, 66 (2007) ("Where a contract contains a provision requiring written notice of a claim for breach, '[t]he failure to give notice as required or to show waiver by [the party entitled to notice] is an independent bar to the maintenance of a successful cause of action on the contract.'" (quoting <u>Orkin Exterminating Co. v. Stevens</u>, 130 Ga. App. 363, 369, 203 S.E.2d 587, 593) (1973)) (alterations in original)). Critically, "oral notice is not sufficient where written notice is required." <u>Id.</u> at 860, 645 S.E.2d at 66; <u>see also</u> <u>Eells v. State Farm Mut. Auto. Ins. Co.</u>, 324 Ga. App. 901, 904, 752 S.E.2d 70, 73 (2013) (holding that oral notice did not comply with an insurance contract's requirement for written notice of a claim); <u>Moss v. Cincinnati Ins. Co.</u>, 154 Ga. App. 165, 165, 268 S.E.2d 676, 677 (1980) ("Even if appellants established that oral notice had been given, it would not satisfy the written notice requirement.").

We are not convinced by Triad's attempts to distinguish <u>Pillar</u> and <u>Eells</u>.  In <u>Pillar</u>, two companies had entered into a real estate contract. <u>See</u> 284 Ga. App. at 858, 645 S.E.2d at 65.  The buyer paid earnest money but, after becoming concerned that the seller would not deliver the property with the relevant permits,

7

did not complete its purchase. See id. at 859–60, 645 S.E.2d at 66. The court determined that the contract required written notice within fifteen days of the date set for closing as a condition precedent to the buyer recovering its earnest money. See id. at 861, 645 S.E.2d at 67. Because the buyer had not provided such written notice, the court, reasoning that "oral notice is not sufficient where written notice is required," id. at 860, 645 S.E.2d at 66, ruled that the buyer had breached the contract and could not recover its earnest money. See id. at 860, 645 S.E.2d at 67. We disagree with Triad's characterization of the case as one in which no notice was provided at all. While the Pillar court did not explicitly state that oral notice was provided, this is the fairest reading of that case. The court stated that both parties had attended the abortive closing but the buyer refused to close because it suspected that the seller lacked the permits. See id. at 859, 645 S.E.2d at 66. Further, the court repeatedly referred to the buyer's failure to comply with the "written notice" requirements. See id. at 860–61, 645 S.E.2d at 860–62 (referring to "written notice" requirements ten times). We conclude that the contract's requirement of written notice was not mere dicta, but central to the Pillar court's holding.

We also decline to find Eells distinguishable in any relevant respect. In Eells, the plaintiff was injured in a hit-and-run incident. 324 Ga. App. at 902, 752

S.E.2d at 72.  He was covered by his family's insurance policy, which required notice of a claim within thirty days and written notice "as soon as reasonably possible."  Id. at 901, 752 S.E.2d at 72 (quoting Lankford v. State Farm Mut. Auto. Ins. Co., 307 Ga. App. 12, 14, 703 S.E.2d 436, 438 (2010)).  Eells did not realize that he was covered and did not provide written notice to his insurance carrier until nearly two years after the accident.  See id. at 902, 752 S.E.2d at 72.  The court rejected Eells' argument that he had substantially complied with the written notice provision because his mother had mentioned it in passing to their insurance agent several months after the fact.  See id. at 902, 752 S.E.2d at 72.

Clearly Eells might be distinguished on the grounds that oral notice was undeniably tardy.  But the problem for Triad is that the Eells court specifically based its holding on the rule that "even if the insurer receives oral or other notice that does not comply with the policy's written notice requirement, that notice is insufficient."  Id. at 904, 752 S.E.2d at 73.[6]

We agree with Robert Half that the cases Triad cites for the alternative proposition — that "[t]he key issue is whether [the party] had actual notice,"

---

[6] To the extent that Triad relies on the fact that Eells arose in the insurance context in attempting to distinguish it, we fail to see a relevant difference.  A notice provision such as this serves the same function in the insurance context as in the professional services context: ensuring that the party defending the claim has the opportunity to investigate the underlying facts while they are fresh.  If any difference is appropriate, a business entity such as Triad (which was represented by counsel) should be held to a higher standard than a consumer claiming on his insurance policy.

APAC-Georgia, Inc. v. Dep't of Transp., 221 Ga. App. 604, 605, 472 S.E.2d 97, 98 (1996) — are distinguishable.  In APAC-Georgia itself, although the plaintiff had not complied with the precise terms of the written notice provision, it had sent the defendant over fifty letters discussing the subject matter of its claims, to which the defendant had responded.  See id. at 606, 472 S.E.2d at 99.  This, the trial court held, created questions of fact with regard to both substantial compliance and waiver.  See id. at 606, 472 S.E.2d at 99.  Several of the other cases relied upon by Triad are likewise distinguishable because they involve defective written notice, rather than oral notice alone.  See Bickerstaff v. SunTrust Bank, 332 Ga. App. 121, 125–26, 770 S.E.2d 903, 908 (2015) (holding that a plaintiff's filing a lawsuit and serving notice on defendant within the notice period constituted substantial compliance with a provision requiring written notice to opt out of arbitration agreement), rev'd on other grounds, 299 Ga. 459, 788 S.E.2d 787 (2016); Del Lago, 330 Ga. App. at 143, 764 S.E.2d at 599  (holding that an issue of material fact existed with regard to whether the defendant had substantially complied with a contract requiring its written notice to the plaintiff and a third party by giving written notice to the plaintiff and misrepresenting that notice had been given to the third party); Rice v. Lost Mountain Homeowners Ass'n, Inc., 269 Ga. App. 351, 355, 604 S.E.2d 215, 220 (2004) (upholding the district court's determination that

10

a plaintiff substantially complied with a requirement of notice by certified mail by providing "written and oral notice"); Wallick v. Period Homes, Ltd., 252 Ga. App. 197, 202, 555 S.E.2d 863, 868 (2001) (holding that a material question of fact existed with regard to whether written notice not specifying the reasons for a contract's termination coupled with oral notice specifying those reasons constituted substantial compliance with a requirement of written notice specifying those reasons).[7]

The other cases that Triad relies upon are distinguishable because they rest on waiver of strict compliance with the written notice provision. See Stimson v. George Laycock, Inc., 247 Ga. App. 1, 4–5, 542 S.E.2d 121, 124–25 (2000); Fremichael v. Doe, 221 Ga. App. 698, 700–01, 472 S.E.2d 440, 442–43 (1996); S. Mut. Ins. Co. v. Mason, 213 Ga. App. 584, 587, 445 S.E.2d 569, 572 (1994).[8] As Triad admits, it has not argued that Robert Half waived the written notice

---

[7] Because oral notice cannot constitute substantial compliance with a written notice condition under Georgia law (absent waiver or estoppel), we do not reach the question of whether Triad's oral notice would itself have been sufficient to constitute actual notice. It likely was not; although Triad alleges that Robert Half knew of some facts underlying its eventual claims — i.e. that McKay had some involvement in the fraud — Triad did not allege that it communicated (even orally) that it considered that it had legal claims against Robert Half until November 2012 (in its motion for rehearing) or January 2013 (on the initial summary judgment record).

[8] Triad also makes passing reference to three other distinguishable cases. See Rome Healthcare LLC v. Peach Healthcare Sys., Inc., 264 Ga. App. 265, 272, 590 S.E.2d 235, 241 (2003) (written notice twice provided); State Highway Dept. v. Hall Paving Co., 127 Ga. App. 625, 628, 194 S.E.2d 493, 495 (1972) (nonconforming written notice could constitute substantial compliance); McDaniel v. Mallary Bros. Mach. Co., 6 Ga. App. 848, 66 S.E.2d 146, 147 (1909) (party had waived strict compliance).

11

requirement. Consequently, it cannot prevail upon this theory. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has 'repeatedly held that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."'" (quoting Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994))).

Additionally, Triad accuses the district court of erroneously rewriting the General Conditions by requiring notice within a reasonable time of Triad's discovery of the fraud. Instead, Triad would have had the district court determine that it could not have complied with the written notice provision, and then simply ignored the notice provision. The only authority that Triad cites in the course of arguing this point stands for the more general proposition that "conditions precedent are not favored in interpreting contracts," e.g., Gen. Steel, Inc. v. Delta Bldg. Sys., Inc., 297 Ga. App. 136, 139, 676 S.E.2d 451, 454 (2009), and Georgia's statutory rule that "[i]mpossible . . . conditions are void," O.C.G.A. § 13-5-5.

Triad cannot be heard to complain. The district court did not hold that Triad's compliance with the notice provision was impossible; it merely assumed for the sake of argument that Triad's initial noncompliance was justified, and went on to hold that, even so, Triad's failure to provide Robert Half with written notice

12

after it learned of McKay's fraud was <u>not</u> justified.  We see no reversible error in the district court's analogy to insurance cases in this context.  The district court could have reached the same result by relying on the substantial compliance cases discussed above; Triad's written notice, produced several months too late after it learned of McKay's fraud, does not constitute substantial compliance with the written notice requirement in the contract.  See <u>Pillar</u>, 284 Ga. App. at 861, 645 S.E.2d at 67 (written notice sent twenty-one days too late did not constitute substantial compliance with written notice provision).[9]

B. <u>The Notice Provision</u>

Triad next makes two arguments that the notice provision does not cover all its claims.  First, Triad argues that, because McKay's alleged fraudulent scheme falls outside of the tasks that she was assigned to perform, several of its claims are not claims "related to work performed" by McKay.  We do not reach this argument because Triad waived it by not raising it in the district court.  See <u>Access Now</u>, 10 F.3d at 1572.

---

[9] We also agree with Robert Half that impossibility is a narrow defense to contractual performance in Georgia.  See, e.g., <u>Felder v. Oldham</u>, 199 Ga. 820, 825, 35 S.E.2d 497, 500 (1945) (start of Second World War did not excuse contractual performance).  In arguing that Georgia does not limit impossibility to acts of God, Triad has cited only cases in which performance was rendered impossible by an act of the opposing litigant.  See, e.g., <u>Kent v. Hunt & Assocs., Inc.</u>, 165 Ga. App. 169, 171, 299 S.E.2d 123, 125 (1983) (judge correctly instructed jury that the defendant's nonperformance of a condition was excused if they found that the plaintiff had prevented its performance).  Accordingly, Triad's performance was not impossible as a matter of Georgia law.

13

Second, Triad argues that its "extra-contractual" claims — namely negligence; negligent hiring, retention, and misrepresentation; and respondeat superior — are not barred by the contract. We disagree. Again, the contract requires Triad to have given notice of "any claim related to work performed" in order for Robert Half to be liable.

Triad's argument fails because the contract does not support the distinction between tort claims and contract claims that Triad seeks to read into it. Nor does Triad point to any external source of law that recommends this reading. Additionally, Triad's "extra-contractual" claims all do "relate" to "work performed" under the contract. Triad's negligent hiring, retention, and misrepresentation claims all turn on Robert Half's performance of duties relating to McKay's assignment — i.e., a purported duty to ensure that McKay was not unfit to work as a bookkeeper. In other words, they all relate to work performed by Robert Half. Triad's injury at McKay's hands is also related to work she performed; if she had not been placed in the position she was in, she could not have orchestrated the alleged fraud.

Even if the notice provision were construed only to cover work performed by McKay, Triad's negligent hiring, retention, and misrepresentation claims would fail because they still relate to work performed by McKay. McKay was in the

14

position to orchestrate the alleged fraud because of the role that Triad placed her in pursuant to the assignment; the claims "relate to" the work that McKay was required to perform.

## C. Triad's Other Claims

### 1. Triad's Claim for Attorneys' Fees

A claim for attorneys' fees under Georgia Code § 13-6-11 is derivative and can only survive to the extent that underlying claims survive.  See, e.g., Wright v. Apartment Inv. & Mgmt. Co., 315 Ga. App. 587, 590 n.6, 726 S.E.2d 779, 784 n.6 (2012).  Because we hold that the district court correctly granted summary judgment against Triad on all of its substantive claims, we affirm its dismissal of Triad's claim for attorneys' fees.

### 2. Triad's Motion for Reconsideration

The district court did not err in denying Triad's motion for reconsideration. "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."  Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999) (alteration in original)).  "[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent

15

some showing that the evidence was not available during the pendency of the motion." Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (1997).

Here, the November 2012 letter that Triad attached to its motion for reconsideration was written by Triad and had already been produced during discovery when Triad responded to Robert Half's motion for summary judgment. It was no ground for a motion for reconsideration.[10]  Further, as our foregoing discussion demonstrates, the district court did not commit a clear error of law. Accordingly, it was not abuse of discretion to deny Triad's motion for reconsideration.

## III. CONCLUSION

We have thoroughly considered all Triad's further arguments and find them to be duplicative of the arguments discussed or otherwise without merit. Accordingly, the decision of the district court is AFFIRMED.

**AFFIRMED**

---

[10] And, given that it was still untimely, it would not have changed the result of the district court's analysis, or ours.

16