**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 22, 2020**

# In the Court of Appeals of Georgia

A20A0608, A20A0609. HOWELL v. LOCHWOLDE RI-019 HOMEOWNERS ASSOCIATION, INC.; and vice versa.

RICKMAN, Judge.

After Mitchell Howell began construction of additional structures on his property without obtaining approval from the Architectural Review Board ("ARB") of his homeowners association, the ARB disapproved Howell's construction plans as being inconsistent with the restrictive covenants. Howell brought suit, challenging the enforceability of the covenants. Following a bench trial, the trial court found the covenants enforceable. Howell appeals, and the homeowners association cross appeals a ruling prohibiting it from fining Howell. Because the trial court did not reach the factual or legal conclusions required to resolve this case, we vacate the order below and remand with direction.

Construed in favor of the judgment, see *City Heights Condo. Assn. v. Bombara*, 337 Ga. App. 679, 679 (788 SE2d 563) (2016), the evidence shows that the Lochwolde Homeowners Association, Inc. (the "LHA") was originally incorporated in July 1988 but that it was administratively dissolved nine years later for failure to pay the annual renewal fee; the original covenants expired in 2004.

The corporation remained dissolved until 2016, but meanwhile, beginning in 2006, owners in the development referring to themselves as the LHA undertook the drafting and recording of new covenants for the development. The proposed covenants were distributed at the October 2006 annual meeting, and at both the ensuing November special meeting and thereafter, a majority of the owners in the development voted in favor of the new "Bylaws and Declaration of Covenants, Conditions and Restrictions for Lochwolde Subdivision" (the "2007 Covenants"). The covenants were recorded in the county register the following year, and they purported to submit the LHA to the Georgia Property Owners' Association Act (the "POAA"). Nevertheless, the owners did not reincorporate the LHA at that time even though at least one owner was aware that the LHA had been dissolved.

Howell's predecessors in title voted in favor of the 2007 Covenants, and, when they sold their property to Howell, they told both the closing attorney and Howell that

there were restrictive covenants on the property and that a homeowners association existed for the development. And Howell signed a seller's disclosure indicating that the property was "subject to a Declaration of Covenants, Conditions and Restrictions." After purchasing the property, Howell paid the LHA annual dues for the first four years he owned the property. And he attended a meeting of the LHA in October 2015 where various issues were discussed, including enforcement and payment of dues and enforcement of the covenants.

In 2015, Howell began construction of additional structures on his property, including a free-standing, 26-foot high, fully insulated "tree-house" with a shingled roof and a separate lookout tower and zip line platform. Thereafter, officers of the LHA met with Howell, advised him that the structures violated the 2007 Covenants, and asked him for a copy of the plans, which Howell provided. Howell agreed to halt construction until the ARB could review the plans, but the ARB disapproved Howell's plans on the ground that they were "not consistent with the community-wide standard" as provided in the covenants. Howell requested an appeal of the ARB's decision and challenged the authority of the LHA. In May 2016, an attorney for the LHA responded that the ARB decision would stand.

The current incarnation of the LHA was incorporated on April 4, 2016. In connection thereto, the board of directors adopted a resolution in lieu of an organizational meeting, by which the board accepted and approved the Articles of Incorporation for the LHA and the Certificate of Incorporation issued by the Secretary of State. The board ratified and approved the actions of the incorporator, and it acknowledged and approved the 2007 Covenants and accepted the LHA's obligations thereunder. Finally, the board ratified and affirmed "each and every election, action, decision, and transaction undertaken by the [LHA] at any time prior to April 4, 2016. . . pursuant to its authority under the [2007 Covenants]."

Howell thereafter brought an action against the LHA, seeking an order prohibiting enforcement of the 2007 Covenants, a declaration that the 2007 Covenants did not apply to his property or that the LHA had no authority to prohibit him from the construction at issue, and attorney fees. The LHA answered and counterclaimed, seeking injunctive relief requiring Howell to cease construction and to remove the structures. The LHA also sought attorney fees and a fine against Howell of $25 for each day that Howell was in violation of the 2007 Covenants.

Following discovery and the denial of Howell's motion for summary judgment, the case was tried without a jury. The parties stipulated the basic facts and presented

4

additional evidence. Following the trial, the court held that the fact that the LHA was not incorporated at the time the 2007 Covenants were recorded was not fatal to their viability. The court held that Howell therefore proceeded at his own peril by commencing construction of the structures without ARB approval, and that he is required to remove the structures. In case No. A20A0608, Howell appeals these rulings. The court further held that the LHA did not have authority to adopt a resolution imposing a fine of $25 per day for covenant violations. In A20A0609, the LHA cross-appeals this ruling.

A20A0608

1. Howell contends the trial court erred by holding that the 2007 Covenants were enforceable for several reasons.[1]

> We apply a de novo standard of review to any questions of law decided
> by the trial court; factual findings made after a bench trial shall not be

---

[1] Although Howell contends the trial court erred by denying his motion for summary judgment on the same grounds, "[g]enerally, a ruling on a motion for summary judgment becomes moot following the verdict and judgment." *Smith v. Saulsbury*, 286 Ga. App. 322, 323 (1) (a) (649 SE2d 344) (2007). A party may appeal the denial of summary judgment as part of the direct appeal "if the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial." Id. But Howell only argues that certain facts contained in the discovery depositions show that the trial court erred, and these same facts either were or could have been addressed at trial.

set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.

(Citation and punctuation omitted.) *ALA Constr. Svcs. v. Controlled Access*, 351 Ga. App. 841, 841-842 (833 SE2d 570) (2019).

Howell's primary argument is that because the original LHA had been administratively dissolved and therefore was only authorized to wind up its affairs, it was not authorized to create and record the 2007 Covenants, and, consequently, the covenants are not enforceable. See generally OCGA § 14-3-1421 (c) ("A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs. . . ."); OCGA § 44-3-227 (a) ("Prior to submission to [the POAA], the association shall be duly incorporated.").

But the trial court did not conclude that the original LHA created and recorded the 2007 Covenants. Rather, the trial court held that under two "savings provisions" of the POAA, the fact that the LHA was not formally incorporated in 2007 was "not fatal to the viability of the 2007 Covenants," citing OCGA §§ 44-3-232.1 and 44-3-233. We conclude, therefore, that Howell's argument is inapposite. Nevertheless, for the following reasons, we hold that the trial court failed to apply the correct law and

6

to find facts pertaining thereto, which requires remanding the case for reconsideration.

(a) The first of the two statutes upon which the trial court relied provides that the right to control an association can pass from the declarant to the property owners in the development even if, such as here, the declarant fails to maintain its annual registration as a corporation. See OCGA § 44-3-232.1 (a). But to take effect, that statute requires an action in superior court by one or more owners to gain control of the association, see OCGA § 44-3-232.1 (b), and there is no evidence that such an action was ever filed. Thus, we find OCGA § 44-3-232.1 inapplicable as a matter of law.

(b) The trial court also relied on OCGA § 44-3-233, but the trial court failed to make appropriate findings of fact and law, which requires us to remand.

A property owners' association is "a corporation formed for the purpose of exercising the powers of the property owners' association created under [the POAA]." OCGA § 44-3-221 (16). And, as shown above, "[p]rior to submission to [the POAA], the association shall be duly incorporated." OCGA § 44-3-227. But, OCGA § 44-3-233 expressly provides that "substantial compliance with the requirements of [the POAA] for the establishment of a property owners' association shall suffice to b[r]ing

7

property described in an instrument recorded pursuant to this article within the purview and application of this article." OCGA § 44-3-233.The POAA further provides that its provisions and the provisions of "an instrument recorded pursuant thereto shall be liberally construed in favor of the valid establishment of [a] property owners' association pursuant to this article with respect to the submitted property." Id.

Thus, to apply OCGA § 44-3-233 to this case, the trial court was required to find that those acting in the name of the LHA who recorded the 2007 Covenants substantially complied with the requirements of the POAA for the establishment of a property owners' association, which is a question of fact for the trial court. See generally *Del Lago Ventures v. QuikTrip Corp.*, 330 Ga. App. 138, 143 (1) (b) (764 SE2d 595) (2014) (finding a question of fact as to whether delivery of termination letter constituted substantial compliance with contract); *Evans v. Ohio Cas. Ins. Co.*, 264 Ga. App. 485, 486 (1) (591 SE2d 378) (2003) (finding a question of fact as to whether party substantially complied with insurance contract).

Here, the trial court held that the LHA did not exist at the time that the 2007 Covenants were recorded, but given that (1) the requisite number of owners voted for the 2007 Covenants at the time, (2) the POAA has certain applicable "savings

8

provisions," and (3) the newly incorporated LHA appropriately assumed the responsibilities set forth in the 2007 Covenants, "the subsequent incorporation [of the LHA] resulted in a governing authority which appropriately assumed the responsibilities set forth in the 2007 Covenants."

Although the trial court correctly cited OCGA § 44-3-233 as relevant to the issues before it, it did not conclude that the owners had substantially complied with the requirements of the POAA for the establishment of a property owners' association; indeed, it did not specifically reference any such requirements. See OCGA § 44-3-220 et seq. (the POAA); see also *Marino v. Clary Lakes Homeowners Assn.*, 322 Ga. App. 839 (747 SE2d 31) (2013) (analyzing the enforceablity of a covenant under the POAA), overruled on other grounds by *S-D RIRA, LLC v. Outback Property Owners' Assn.*, 330 Ga. App. 442 (765 SE2d 498) (2014). Rather, the trial court appears to have determined that the actions of the LHA appear to be reasonable based on the cited facts. But that reasoning does not support the trial court's conclusion that under OCGA § 44-3-233 the fact that the LHA was not incorporated at the time the 2007 Covenants were recorded was not fatal to their viability.

9

We therefore vacate the trial court's order and remand for proper consideration of, and conclusions regarding, the factual and legal questions at issue in this case. See *Wallace v. Wallace*, 301 Ga. 195 (800 SE2d 303) (2017) (vacating trial court order entered following a bench trial and remanding for consideration of the correct legal and factual questions at issue in the case). When, such as here, parties request findings of fact and conclusions of law, "a dry recitation that certain legal requirements have been met is insufficient to satisfy the requirements of the law. The trial judge is to ascertain the facts and to state not only the end result of that inquiry but the process by which it was reached." (Citation, punctuation, and emphasis omitted.) Id. at 199 (II). Without such findings, "meaningful appellate review is not possible." Id.

Accordingly, after proper consideration of the factual and legal questions at issue, the trial court is directed to issue appropriate findings of fact and conclusions of law that address whether the 2007 Covenants are enforceable against Howell.

A20A0609

2. In the cross-appeal, the LHA contends that the trial court erred by holding that it was not authorized to enforce a fine against Howell for his failure to remove the structures. Because this holding is dependent on the primary issue discussed in

10

Division 1, we also vacate this ruling by the trial court and remand for further consideration consistent with this opinion.

*Judgment vacated and case remanded with direction. Dillard, P. J., and Brown, J., concur.*